**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**MATTHEW SCHWARZ, GULF COAST RECOVERY, INCORPORATED, a Florida corporation, JOHN DOE, I, an anonymous individual, JOHN DOE, II, an anonymous individual, JOHN DOE, III, an anonymous individual, JOHN DOE, IV, an anonymous individual, JANE DOE, V, an anonymous individual, JANE DOE, VI, an anonymous individual, JANE DOE, VII, an anonymous individual, JANE DOE, VIII, an anonymous individual, JANE DOE, IX, an anonymous individual,**

**Case No:**

**Plaintiffs,**

**v.**

**CITY OF TREASURE ISLAND, and CITY OF TREASURE ISLAND CODE ENFORCEMENT BOARD,**

**Defendants,**

______________________________/

# COMPLAINT

Plaintiffs, Matthew Schwarz ("Schwarz"), Gulf Coast Recovery, Incorporated ("Gulf Coast"), and John Does I through IV and Jane Does V through IX (collectively "John and Jane Does"), through their undersigned counsel, sue City of Treasure Island (the "City") and the City of Treasure Island Code Enforcement Board (the "Board"), and aver:

## The Parties, Jurisdiction, and Venue

1. Schwarz is a natural person residing in Pinellas County, Florida.

2. John and Jane Does are representative occupants residing at each of the properties described herein.

3. Gulf Coast is a corporation licensed to conduct business in Florida and maintains its principle place of business in Treasure Island, Florida.

4. The City is a municipality incorporated under the laws of the State of Florida. Among other things, the City is empowered to enforce its zoning laws consistent with existing federal and state laws.

5. The Board is the entity through which the City acts to enforce its zoning code. The Board derives its powers from chapter 162, Florida Statutes (2005) and chapter 2, article III, City of Treasure Island Code of Ordinances (1993).

6. Jurisdiction is brought pursuant to, and without limitation, title 28 United States Code sections 1331, 1367 (2004).

7. Venue lies herein pursuant to title 28 United States Code section 1391 (2004).

## ALLEGATIONS COMMON TO ALL COUNTS

### Gulf Coast Recovery

8. Gulf Coast is a Florida corporation providing out-patient, rehabilitation services to recovering alcoholics and other, controlled substance abusers. Its out-patient office is located in Treasure Island, Florida. Schwarz founded Gulf Coast in 2003 to provide outstanding, rehabilitative services to those individuals needing professional assistance to overcome addictions to alcohol and other controlled substances.

9. Gulf Coast obtains clients through phone book and internet advertising, referral providers, and its reputation in the community.

10. Once an individual learns about Gulf Coast through the various advertising media described above, he or she will call a hotline where an employee will assess and determine whether he or she will qualify for Gulf Coast's services and facilities.

11. After the initial phone call, and if the individual decides to use Gulf Coast's services, then he or she will physically visit the out-patient facility described above. At that time, one or more of Gulf Coast's professionals will perform an interview and determine whether it will be able to assist the individual.

12. If so, Gulf Coast admits the individual to one of its many recovery programs, which affords the individual with, among other things, the opportunity to attend community meetings, embark upon pre-planned field trips, and exercise at local gymnasiums, if he or she chooses to do so.

13. None of the aforementioned individuals are consuming alcohol or using controlled substances when they are admitted to one of Gulf Coast's rehabilitation programs.

14. The Florida Department of Children and Families ("DCF"), the regulatory agency charged with licensing drug and alcohol rehabilitation facilities, has licensed Gulf Coast to provide the aforementioned out-patient services. DCF derives its powers to regulate facilities like Gulf Coast's through chapter 397, Florida Statutes (2005), "the Hal S. Marchman Alcohol and Other Drug Services Act of 1993."

**The Residences**

15. One of the services that Gulf Coast offers is the ability for clients to rent a single-family home during the course of their treatment. Gulf Coast believes that its clients will feel more comfortable as they progress through the out-patient treatment program by living in one of the single-family residences. The residences serve as a safe and mutually-supportive

environment for the clients during their recovery period. There is a strong likelihood that many of Gulf Coast's clients would relapse into drug or alcohol use if they did not live with similar individuals during the course of their treatment.

16. The residences serve as the client's permanent home during the time that he or she occupies it. Many of the clients are constructively or actually homeless but for the accommodations that Gulf Coast and Schwarz provide.

17. Clients are not required to live in one of these residences as a condition to receiving out-patient treatment from Gulf Coast.

18. There are no rules governing the manner in which the residents live, except that each residence must be democratically self-governed by its residents.

19. No professional treatment, therapy, or paid staff is provided at the residences. The residents are responsible for their own food preparation and care as well as for running the residence. There is no limit on the amount of time an individual may reside in one of the residences; as long as he or she does not resume the use of drugs or alcohol and does not engage in disruptive behavior, an individual could reside in one of the residences indefinitely.

20. In or about 2004, Gulf Coast opened its first residence, which was, and remains located at 12305 3rd Street, Treasure Island, Florida ("12305 3rd Street"). It is a single-family residence with a separate "mother-in-law" unit. Schwarz owns 12305 3rd Street.

21. 12305 3rd Street has a total of four bedrooms and has a private boat dock located at its rear portion. It is surrounded on all sides by multi-family dwellings. The traffic and noise generated by the surrounding dwellings far exceed any traffic and noise generated by residents

living at 12305 3rd Street. 12305 3rd Street is zoned RM-15 under the City's Land Development Code (the "LDC").[1]

22. Gulf Coast and/or Schwarz have opened other locations throughout the City of Treasure Island to provide housing for Gulf Coast clients. These properties include: (i) 250 115th Avenue, Treasure Island, Florida 33706 ("250 115th Avenue"); (ii) 10214 Tarpon Drive, Treasure Island, Florida 33706 ("10214 Tarpon Drive"); (iii) 10399 Paradise Boulevard, Treasure Island, Florida 33706 ("10399 Paradise Boulevard"); (iv) 12275 3rd Street East, Treasure Island, Florida 33706 ("12275 3rd Street East"); and (v) 10101 Tarpon Drive, Treasure Island, Florida 33706 ("10101 Tarpon Drive"). Except for 10214 Tarpon Drive—which is zoned RU-75—the properties described above are all zoned RM-15.

23. Schwarz owns 250 115th Avenue. Neither Gulf Coast nor Schwarz owns any of the other properties described above. The owners of these properties lease them to Gulf Coast and/or Schwarz. Gulf Coast and/or Schwarz then sublets the properties to its clients.

24. Gulf Coast is relegated to this leasing activity because no zoning district within the City allows it to operate a residential treatment facility licensed by DCF under chapter 397, Florida Statutes.

25. Gulf Coast believes that it would be able to provide additional, beneficial services to its clients if it could operate a full-scale, residential treatment center in Treasure Island.

[1] The list of permitted uses under the RM-15 zoning district are as follows: (i) Dwelling, residential; (ii) Public park and public recreation areas; (iii) Home occupations in dwelling units as defined in section 68-493; (iv) Group homes licensed by the state department of health and rehabilitation excluding ACLF's; (v) Telecommunication antennas attached to existing structures which comply with section 68-465 are prohibited; (vi) Public education facilities; and (vii) Community residential homes. The listed special exception uses under the RM-15 are as follows: (i) Essential services; (ii) Multiuse private docks; and (iii) Private yacht clubs. The list of accessory uses under RM-15 is: (i) private swimming pools; (ii) other accessory uses customarily incidental to a permitted use or approved special exception use not involving the conduct of business and as limited by the provisions of article VII of this chapter; (iii) Private docks; and (iv) Parking lots and parking garages.

26. Gulf Coast has contacted DCF to determine whether it could qualify for a license to operate a residential treatment facility. DCF has stated that Gulf Coast could qualify for a license if that use is consistent with the LDC.

27. Gulf Coast has not proceeded any further to obtain a license from DCF because the LDC does not permit residential treatment facilities licensed under chapter 397, Florida Statutes to be used within the City's jurisdictional limits.

28. Based on the City's, its staff's, and elected officials' conduct, as described herein, Gulf Coast believes that the City will not amend the LDC to allow residential treatment facilities licensed under chapter 397, Florida Statutes to be used as permitted, accessory, or conditional use in any zoning district.

**The City's Attempts to Prevent the Use of the Residences**

29. On or about December 13, 2004, one of the City's employees, Ms. Peggy Proper, contacted Gulf Coast and demanded for its representatives to visit City Hall and apply for a license to operate a group home and/or a community residential home at 12305 3rd Street and 10214 Tarpon Drive. Ms. Proper's initial contact to Gulf Coast was in response to a complaint by a neighbor, Mr. James Gostree. According to Mr. Gostree, Schwarz and Gulf Coast were renting 12305 3rd Street to recovering alcoholics and substance abusers. Other neighbors in the surrounding area complained to the City, as well. These complaints spurned the City's actions described herein.

30. Gulf Coast was not operating a group home or community residential home, as defined by the City's zoning code, at these locations; thus, Gulf Coast did not believe that it needed a license. Nonetheless, and in an effort to cooperate with the City, Schwarz, on behalf of Gulf Coast, visited City Hall to learn of the City's stated concerns. Schwarz conferred with Ms.

Proper. She told Schwarz that the City did not know whether Schwarz needed to apply for any license and that she would contact him after the New Year to provide direction concerning the City's position.

31. On or about December 20, 2004, one of the City's code enforcement inspectors, Carol Kitts ("Kitts"), contacted Schwarz and Gulf Coast. She contended that they were violating the LDC. Ms. Kitts stated:

> Dear Sir:
>
> It has come to our attention that you have two rentals in this city being used as boarding, halfway, or other type of group home where there are more than three unrelated persons living together. The City of Treasure Island requires that a license be obtained for any type of rental use as mentioned above. Please submit a detailed letter explaining the type of rentals you have, the number of leases in each home, what the lease includes, Re: utilities, food, furnishings, and activities which take place there. Please attach a copy of leases for each home.

32. Schwarz responded to the December 20, 2004 letter, and requested for Ms. Kitts to provide him with the specific basis for the City's contentions so that he could address its concerns.

33. On February 1, 2005, Ms. Kitts responded and included an additional address—205 115th Avenue—where the City contended that Gulf Coast and/or Schwarz were violating the LDC. Ms. Kitts stated:

> Dear Sir:
>
> It has come to our attention that you have three rentals in this city being used as halfway, or other type of group homes where there are more than three unrelated persons living together. The apartment, which you are using as an office on 3rd, will require an additional license. The City of Treasure Island requires that a license be obtained for any type of rental use as mentioned above. Please submit a detailed letter explaining the type of rentals you have, property owner, the number of leases in each home, what the lease includes, Re: utilities, food, furnishings, rules, and activities which take place there. Please attach a copy of a blank lease form for each home. House rules and other pertinent information. Additionally, we need to know the rent, which is expected from each tenant.

34. On February 3, 2005, Schwarz, requested for Ms. Kitts to provide him with the manner in which he could correct any violation that the City claimed to exist.

35. On February 14, 2005, Ms. Kitts wrote to Gulf Coast and stated:

> As indicated in our previous correspondence, the City of Treasure Island has received complaints regarding possible zoning violations at three residential addresses that you may be using or housing for clients from your practice. These addresses are:
>
> 145 108th Avenue: Office
> 12305 3rd Street E, Residential-housing RM-15
> 10214 Tarpon Drive, Residential-housing RU-75
> 250 115th Avenue, Residential-housing RM-15
>
> All of the above addresses have residential zoning. These properties may be used as rentals however uses such as group homes and congregate living may require additional city approvals and state licensing. Also the frequency of tenant turnover and the number of unrelated families need to be defined to determine if these properties constitute a transient use or is over crowded. We are aware that these properties have been advertised as halfway houses. In addition, the apartment that you are using as an office on 3rd will require an additional license. The City of Treasure Island requires that a license be obtained for any type of rental use as mentioned above.
>
> Please submit a letter detailing the character of use for each of the above addresses including:
>
> 1. Property owner
> 2. Frequency of tenant turnover
> 3. Any on site counseling
> 4. Any on site congregate dining
> 5. The number of unrelated families/persons in each unit
> 6. Are rental leases required for each unrelated family?
>
> Please respond in writing within five working days from the date of this correspondence. The city is trying to determine if zoning violations exist. If we do not receive information to make this determination we will proceed with a violation process based on the information to date. This will result in a Code Enforcement Board action or a case for County Court.
>
> Also, please be advised that any violation(s) are the responsibility of the property owner and all formal actions will be brought against the owner.

> This correspondence also responds to your attorney, Ethan Loeb's request as to the basis for potential citation(s). As stated above, the basis is violation of the City of Treasure Island zoning regulations.

The LDC comprises hundreds of pages filled with technical terms and phrases. Merely citing to the LDC, without elaboration, did not constitute notice of a potential violation. Ms. Kitts simply refused to provide the legal basis for the City's contentions stated above, and she failed to provide Gulf Coast and Schwarz with the manner in which they could correct any problem that the City perceived to exist.

**<u>The First Notice of Violation</u>**

36. On or about April 25, 2005, the City served Schwarz with a notice of violation concerning 12305 3rd Street, and that it would be seeking to prosecute the claimed violation through the Board.

37. Because Schwarz owns 12305 3rd Street, the City cited and served him, instead of Gulf Coast, with the notice.

38. The notice alleged that 12305 3rd Street violated section 419.001, Florida Statutes (2005) because the City perceived that Schwarz was operating a community residential home. The City does not have jurisdiction to enforce violations of section 419.001, Florida Statutes; such authority is vested exclusively with DCF. Even if the City had the authority to enforce the claimed violation, Schwarz was not operating a community residential home, as defined by the City's LDC.

39. The notice further alleged that Schwarz was violating City of Treasure Island Ordinance 46-73, which prohibits an individual from operating two businesses at the same address without a license for each business. According to the City, Schwarz was allowing Gulf Coast to operate an office and a halfway house at 12305 3rd Street. Gulf Coast does not

maintain an office at 12305 3rd Street; thus, by plain operation, Schwarz could not be in violation of Ordinance 46-73.

40. The City scheduled a hearing before the Board and notified Schwarz about it.

41. On or about June 20, 2005, Schwarz contacted the City and requested for its staff to meet and discuss the alleged violations and the manner in which he could address them. The City refused this request and demanded that he appear before the Board.

**The First Hearing**

42. On June 23, 2005, the Board conducted a hearing to adjudicate Schwarz for the alleged violations described above.

43. The hearing lasted almost three hours. Surrounding neighbors appeared and voiced objections. Ms. Kitts presented testimony and evidence concerning the use of 12305 3rd Street, including, but not limited to: (i) it was being rented to recovering alcoholics and substance abusers; (ii) that such individuals were not allowed to reside within RM-15 zoning districts; and (iii) that such a use could only be used in other, more intensive zoning districts throughout the City.

44. None of the evidence that the City submitted could substantiate the cited violations.

45. The Board continued the hearing for two weeks.

46. On July 6, 2005, the Board reconvened. At the outset, Board member, John Hehn, disclosed that he had traveled to 12305 3rd Street to inspect the residence located thereon and spoke with one of its residents. These ex parte discussions are expressly prohibited by the City's Code of Ordinances and the Board's rules.

47. Upon this discovery, Schwarz attempted to question Mr. Hehn about these ex parte discussions. The Board's attorney, Ms. Maura Kiefer, refused to allow this line of questioning and recommended that the Board prohibit it. The Board adopted Ms. Kiefer's recommendation.

48. Schwarz then attempted to disqualify Mr. Hehn based on these discussions; Ms. Kiefer recommended for the Board to deny this request. The Board adopted Ms. Kiefer's recommendation and denied the request.

49. The Board called Schwarz to testify. Because it was the City's burden to prove the existence of the alleged violation, Schwarz refused.

50. The City failed to prove the existence of the violations described in paragraphs 38 and 39 above.

51. It tacitly conceded this failure by immediately dismissing the case against Schwarz after he refused to testify.

52. Schwarz requested for the City to meet and discuss all of the issues described herein to resolve this issue outside of a code-enforcement-hearing process.

53. Schwarz scheduled a meeting with the City through its Building Official, Michael Wichman. Mr. Wichman stated that the City would be filing a new code enforcement case against Schwarz. Mr. Wichman stated that the City staff was receiving considerable pressure from the City Commission, Mayor Mary Maloof, and Treasure Island citizens.

54. After the hearing, one of the City's Commissioners, Phil Collins, confronted Schwarz. Commissioner Collins stated that he was receiving a lot of pressure from surrounding neighbors, that he was extremely displeased that Schwarz had leased 12305 3rd Street to recovering alcoholics and substance abusers, and that Schwarz needed to figure out a new

arrangement for Gulf Coast's clients. Upon information and belief, Gulf Coast and Schwarz believe that City Commissioner has met with Treasure Island citizens to discuss the uses that are occurring at the residences described herein.

55. Due to scheduling conflicts among the parties, the City and Schwarz were unable to meet.

**The City's Interference with Gulf Coast's Business**

56. After the hearing described above, Ms. Kitts and other City staff members embarked upon a series of intentional acts to interfere with Gulf Coast's business interests.

57. Ms. Kitts and other City staff members contacted the owners of the properties from whom Gulf Coast and Schwarz lease to their clients. Ms. Kitts told these owners to either evict Gulf Coast's clients or face severe retaliation from the City. Based on these threats, some of the owners have threatened to terminate their business relationship with Gulf Coast for fear of retaliation from the City.

58. Ms. Kitts and other City staff members called the Pinellas County Property Appraiser's Office. Upon information and belief, Kitts told the Property Appraiser's office that Schwarz did not live at 12305 3rd Street for the 2004 and 2005 tax years, and as such, that he should not be allowed to claim a homestead exemption for ad valorem tax purposes.[2] Based on this communication, the Property Appraiser's office contacted Schwarz, cited him with a potential violation of controlling Florida Statutes, and purported to impose a tax lien on 12305 3rd Street. Schwarz has contacted the Pinellas County Property Appraiser's office to rectify this issue. To date, no resolution on this matter has occurred.

[2] While 12305 3rd Street was not Schwarz's primary address for the 2005 tax year, it was for 2004. Thus, for the tax year of 2004, he could qualify for a homestead exemption.

59. Ms. Kitts and other City staff members traveled to Gulf Coast's office where it provides out-patient, rehabilitation services. They took photographs of vehicles, followed certain individuals leaving the facilities, and harassed other individuals that entered and exited Gulf Coast's office.

60. Ms. Kitts has traveled to the other addresses where Gulf Coast and/or Schwarz rent to Gulf Coast clients, spoken with individuals who reside there, has stated that Schwarz and Gulf Coast cannot engage in the activities described herein on the City of Treasure Island, and has told them that they should leave because Gulf Coast and Schwarz are violating the law.

61. These actions have interfered with Gulf Coast's good name and reputation and its ability to operate a successful business.

62. But for the nature of their business, Ms. Kitts and other City staff members would not have taken the aforementioned actions against Gulf Coast and Schwarz.

**The Second Notice of Violation and Subpoena**

63. On or about July 8, 2005, the City served Schwarz with a notice of violation claiming that he was using 12305 3rd Street inconsistent with the permitted, accessory, or conditional uses allowed in the RM-15 zoning district.

64. The City contended that the use violated section 68-221, City of Treasure Island Code of Ordinances. The notice did not specifically state the alleged, illegal, ongoing use at 12305 3rd Street; nevertheless, the City demanded that Schwarz cease the use at 12305 3rd Street. The City threatened to conduct a hearing before the Board to adjudicate the alleged violation.

65. On July 26, 2005, the City served Schwarz with a notice to appear before the Board on August 10, 2005 to determine whether he was in violation of section 68-221, City of

Treasure Island Code of Ordinances. Included therein was a signed subpoena for Schwarz to appear before the Board. The subpoena demanded for Schwarz to provide copies of all leases for 12305 3rd Street. Those leases contained confidential information relating to Gulf Coast's clients. Although Schwarz did not want to provide these documents for fear of violating certain federal and state laws governing client confidentiality, he did provide redacted versions of leases to avoid being held in contempt of the Board's subpoena.

**The Public Records Request and Attempt to Prepare for the Hearing**

66. Upon receipt of said notice, Schwarz propounded a public records request to the City so that he could learn what documents existed within the City's and the Board's files. Schwarz did so because he had no other means to prepare for the upcoming hearing. Schwarz requested such documents from various City staff members, Mayor Mary Maloof, and the City Commissioners. Schwarz did so based on the comments that Mayor Maloof, the City Commissioners, and the City's staff made during various public hearings.

67. Schwarz requested such documents to be produced on or before August 3, 2005 so that he could adequately prepare for the upcoming hearing.

68. On August 2, 2005, the City Commission conducted a public meeting. There, the commissioners discussed the public records request. The City's Attorney, Ms. Kiefer, informed the City Commission that she was handling the public records request.

69. One City Commissioner, Mr. Edward Gayton, asked Ms. Kiefer if he needed to disclose e-mails that related to the public records request but were sent to his privately-owned, e-mail address—as opposed to his official, government-owned, e-mail address. Initially, Ms. Kiefer stated that private e-mail received relating to public business was not subject to the public records law.

70. Commissioner Gayton and Commissioner Collins requested clarification on this point, specifically stating that they had received written complaints about Gulf Coast and Schwarz through their privately-owned, e-mail accounts. Ms. Kiefer stated that she did not know the answer to that question—despite her previous statement to the Commissioners that such e-mails were not subject to disclosure.

71. To date, Ms. Kiefer, upon information and belief, has not informed the Commission about the above-described issue. Gulf Coast has this belief because it has not yet received any of the written complaints to which Commissioners Gayton and Collins alluded during the August 2, 2005 meeting.

72. On or about August 8, 2005, Ms. Kiefer contacted Schwarz. She stated that the public records request was overly broad and demanded for Schwarz to narrow it.

73. Schwarz, through his counsel, contacted Ms. Kiefer, threatened to sue the City, and demanded the public records before the August 10, 2005 hearing.

74. The City began to immediately search for the requested public records. Many City's staff members commenced work to unearth the requested documents. Plaintiffs believe that the City's procrastination was a targeted effort to discriminate against them.

75. The City did not provide Schwarz with the public records until the morning of the hearing.

76. Upon review and inspection, Schwarz realized that the City had not provided him with copies of all requested documents.

**The Community Objections before the City Commission**

77. On or about August 9, 2005, the City Commission conducted a noticed, public hearing for general business.

78. There, multiple citizens from Treasure Island appeared and voiced objections about Gulf Coast and Schwarz, and the manner in which they were using the residences described herein.

79. The objectors stated that: (i) recovering addicts should not reside within City of Treasure Island residential districts; (ii) recovering addicts should reside in commercial and industrial districts; and (iii) the City Commission needed to resolve the Gulf Coast and Schwarz "problem," as it was becoming a "cancer" on the City of Treasure Island.

80. In response to the objections, Mayor Mary Maloof, the City's Manager, the City's Attorney, and the City Commissioners, encouraged all of the citizens to attend the code enforcement hearing scheduled for August 10, 2005 to show their support and to help the City prevail at the hearing.

**The Second Hearing**

81. On or about August 10, 2005, the Board conducted a hearing. There, surrounding neighbors appeared. Bay News 9, a local, independent news agency, attended the hearing in order to provide coverage to those individuals who could not attend the hearing.

82. Mayor Maloof and Commissioner Collins appeared as well. Individuals from the audience passed by Schwarz and told him that they were going to take all measures necessary to stop him from renting any residence on Treasure Island to recovering alcoholics or substance abusers.

83. The City's code enforcement inspector, Ms. Kitts, was supposed to serve as the prosecutor. With the assistance of Ms. Kiefer, Ms. Kitts commenced the hearing with a brief opening statement.

84. Thereafter, Ms. Kitts did not substantively speak at the hearing again. This is because Ms. Kiefer acted for Ms. Kitts as the prosecutor.

85. Under existing law, Ms. Kiefer, was required to sit as advisor to the Board. She did not; she also acted as the prosecutor by trying to prove the existence of the claimed violation. Ms. Kiefer conceded as much at the outset of the hearing when she stated her role to the Board: "I will be focused on any witnesses on behalf of the petitioner [the City]."

86. The City, through Ms. Kiefer, called certain witnesses to testify. The first witness that the City called was Mr. James Gostree, who lives adjacent to 12305 3rd Street. Mr. Gostree provided a brief statement; thereafter, Ms. Kiefer elicited testimony from him. Following her direct examination, Ms. Kiefer inquired of the Board as to whether they had any questions for Mr. Gostree.

87. The Board inquired of Mr. Gostree. Then, Schwarz, through his attorney, attempted to cross-examine Mr. Gostree. First, Schwarz objected to Ms. Kiefer's two-sided role as the prosecutor and Board advisor. Before Schwarz could preserve his objections for the record, the Board and Ms. Kiefer threatened Schwarz's attorney with arrest. Specifically, Ms. Kiefer stated "I will call the police. I will call the police to have them quiet you...."

88. Schwarz cautioned Ms. Kiefer that she was violating his due process rights. Ms. Kiefer ignored this cautionary statement and merely stated that Schwarz could appeal her action to a court of competent jurisdiction.

89. One of the Board's members, Mr. Glenn Kaisner, then threatened Schwarz by stating that if he did not "conduct business in a mannerly way, that the Board would ask him to leave."

90. Following this exchange, Ms. Kiefer, again, injected comment and directed Schwarz to question Mr. Gostree. Again, it was requested for Ms. Kiefer to clarify whether she was acting as the Board's attorney or whether she was acting as the prosecutor. Ms. .Kiefer responded: "You're not allowed to question the [City] attorney."

91. The Board's chairman, Mr. Kaul, echoed: "You're not allowed to make that question [whether Ms. Kiefer was acting as a prosecutor]. You're up here right now. You can ask a question of this witness if you'd like to. If you don't have any questions for this witness, I'd ask you to sit down."

92. Schwarz, again, tried to make an objection to Ms. Kiefer's role—prosecutor for the City and advisor to the Board. Thereafter, Ms. Kiefer stated that the objection was noted and demanded for Schwarz's attorney to move on with his cross examination of Mr. Gostree.

93. Schwarz began the cross examination of Mr. Gostree. During his direct examination, Mr. Gostree made defamatory statements about Schwarz and Gulf Coast. These statements were untrue and Schwarz attempted to clarify these statements in order to discredit Mr. Gostree's testimony about other issues.

94. Chairman Kaul immediately interrupted and stated that the cross examination would not continue if it was related to the defamatory statements that Mr. Gostree previously made.

95. Schwarz attempted to continue with this cross examination; however, Mr. Kaul and Ms. Kiefer prevented Schwarz from doing so.

96. Schwarz then inquired into Mr. Gostree's observations of 12305 3rd Street. During this line of questioning, Ms. Kiefer asserted objections on the City's behalf.

97. Schwarz questioned Mr. Gostree about certain documents he had within his possession. Schwarz tried to enter the documents into evidence. In response, Ms. Kiefer directed the Board to deny the request. The Board followed Ms. Kiefer's advice and refused to allow Schwarz to enter the documents into evidence.

98. Following Mr. Gostree's cross examination, Schwarz requested for the Board to either allow him to inquire into the defamatory statements that Ms. Gostree made or to strike his testimony. The Board denied both requests. In fact, one of the Board's member stated:

> If he cannot handle it properly, then I ask him to either sit down and be quiet or to leave the room. My time is more valuable than setting here listening to the garbage that we've heard the last fifteen minutes.

99. Although the Board allowed Mr. Gostree to make these defamatory statements, it simply refused Schwarz with the opportunity to cross examine them.

100. Following cross examination, Ms. Kiefer elicited additional testimony from Mr. Gostree.

101. Thereafter, the City called Ms. Jamie Herman to testify. She lives adjacent to 12305 3rd Street. Following a brief statement from Ms. Herman, Ms. Kiefer, again acting as the prosecutor, elicited testimony on behalf of the City.

102. Following the testimony of Mr. Gostree and Ms. Herman, many citizens for Treasure Island appeared to testify against Schwarz. The majority of the statements made by these objectors were that: (i) recovering drug addicts and alcoholics were residing in a residential district; (ii) such individuals should not be allowed to live in a residential district; and (iii) such individuals should live in another, more intensive zoning district such as commercial or industrial.

103. Chairman Kaul stated that he understood why everyone was very upset and emotional. He thanked everyone for coming to testify.

104. Following the testimony from the surrounding neighbors, Schwarz was permitted to make his presentation of the case.

105. Schwarz first made an objection to the hearing going forward because he could not adequately prepare for it. This lack of preparation was directly related to the City's failure to timely provide him with the public records that were requested, as described above. Following this request, Ms. Kiefer argued on behalf of the City and then recommended for the Board to deny the request.

106. The Board denied Schwarz's request for a continuance.

107. Next, Schwarz moved to disqualify certain Board members. He moved to disqualify Board member, John Hehn, who had previously visited 12305 3rd Street and engaged in communications with one of the residents who lived there. Schwarz also moved to disqualify other Board members because they had prejudged him and characterized him as a "violator."

108. In response, Ms. Kiefer advised the Board as to the manner in which they should vote on the motion to disqualify. The Board followed Ms. Kiefer's advice. Mr. Hehn disqualified himself; the other two Board members refused.

109. Schwarz then made an opening statement and he began to question Ms. Kitts.

110. Schwarz asked Ms. Kitts why the City contended that the use at 12305 3rd Street violated section 68-2, City of Treasure Island Code of Ordinances.

111. Ms. Kitts specifically stated: "because you have six or seven unrelated people living in that home."

112. Schwarz elicited further testimony from Ms. Kitts. During most of these inquiries, Ms. Kiefer interrupted, lodged objections, and obstructed Schwarz's attempts to preserve the record.

113. Ms. Kiefer then inquired of Ms. Kitts. The prescient question as it relates to the instant case is as follows:

> ***Q. So is it correct that you're not just presenting it to the board that says it's a tourist dwelling, which is inconsistent with the RM-15 allowed uses?***
>
> ***A. Correct. Pretty much I filed it [the notice of violation] because I believe that it's a sober living facility.***

(emphasis supplied).

114. The City then called Schwarz to testify. Ms. Kiefer elicited testimony of Schwarz in an effort to prove the City's case.

115. Following this examination, Schwarz tried to introduce documents into evidence to preserve the record. These were the public records that the City had produced to Schwarz earlier that morning. Ms. Kiefer objected to this request and recommended for the Board to deny it. The Board denied Schwarz's request.

116. The Board closed the proceedings and engaged in discussion. There, Ms. Kiefer recommended the manner in which the Board should conduct its proceedings, how it should tailor any order that it might enter, and the possible penalties that it should levy against Schwarz.

117. The Board adjudicated Schwarz in violation of section 68-221 City of Treasure Island Code of Ordinances by a 6 to 0 margin.

**<u>The Subsequent Actions</u>**

118. On August 12, 2005, the City mailed to Schwarz a copy of the August 10, 2005 order. It required him to correct the alleged violation on or before August 17, 2005, contact the

City when the correction was made, and to allow its staff to enter 12305 3rd Street for an inspection of it. It further subjected Schwarz to a $250 daily fine if he did not correct the alleged violation by August 17, 2005.

119. Because Schwarz: (i) did not believe that he was in violation of any portion of the LDC; (ii) felt the City was discriminating against him; and (iii) was concerned that he would be violating federal and state statutes if he evicted the tenants at 12305 3rd Street, he did not take any actions required under the August 10, 2005 order.

120. On August 18, 2005, the City issued a notice of return hearing to impose fines against Schwarz. The Board also issued a subpoena for Schwarz to appear at the hearing. The City served Schwarz with the notice by having a police cruiser follow him, pull him to the side of the road, and serve him with the notice. The notice declared that Schwarz failed to correct the alleged violations by August 17, 2005.

121. On or about August 23, 2005, the Commission conducted a public hearing for general business. There, Commissioner Gayton made the following comment about the August 10, 2005 hearing, Gulf Coast, and the manner in which the City should treat it, Schwarz, and their clients:

> I'd like to say that I watched the code enforcement board meeting and I was pleased to see how professional they were, how they handled the situation. When we start to talk about Gulf Coast Recovery...I think that we have a city wide problem. I'd like to see the City Attorney to look into putting all of these cases together. We now have nine drug and alcohol rehab centers on the Island. It is an emergency situation. I think this thing should be dealt with in a swift and severe manner. We could get a court order possibly against Gulf Coast Recovery to stop the company from operating in the City until they come into compliance.

**The Hearing to Impose Fines**

122. On August 25, 2005, the Board reconvened to impose fines against Schwarz. Ms. Kiefer called Schwarz to testify. Schwarz's attorney accompanied Schwarz to the lectern to

assert objections. The Board's chairman, Mr. Kaul, interjected, told Schwarz's attorney to sit down, and threatened Schwarz's attorney with arrest if he did not do so.

123. Schwarz maintained the right to have his attorney stand beside him and assert objections. Thus, Schwarz's attorney did not sit down.

124. Mr. Kaul called the City's police officer to escort Schwarz's attorney from the hearing. Under protest, Schwarz's attorney agreed to sit down in order to avoid arrest.

125. Thereafter, Ms. Kiefer inquired of Schwarz to prove the City's case. Schwarz objected to Ms. Kiefer's dual sided role. She noted the objection and continued with her line of questioning.

126. Thereafter, Schwarz's attorney inquired of the Board to determine whether it would be applying the three factors under section 162.09, Florida Statutes (2005), before it imposed any fine against Schwarz. Pursuant to section 162.09, Florida Statutes, a code enforcement board shall consider: (i) the gravity of the violation; (ii) any actions taken by the violator to correct the violation; and (iii) any previous violations committed by the violator, before it imposes a fine. The Board's chairman, Mr. Kaul, stated that he, nor any other Board member, knew these criteria. However, Mr. Kaul stated that Ms. Kiefer would provide the Board with them.

127. Mr. Kaul further stated:

> I am shocked that someone [Schwarz] who claims to be a member of this community would act in such a manner. I do not think that Mr. Schwarz is a good citizen. I do not think that he has acted in good faith with this Board.

128. Finally, Mr. Kaul stated that Schwarz should simply apply for a rental license and he could be in compliance. Ms. Kiefer interrupted Mr. Kaul and stated:

> He's using a single-family dwelling for multiple rentals and no license will allow him to operate in RM-15. He needs to say he will comply, that he will work with us, and say that he will stop renting out.

129. Ms. Kiefer did not advise the Board of the statutory criteria that it was required to consider. The Board never considered the criteria or weighed them before imposing a fine against Schwarz. Such a willful refusal and outright failure violated the basic tenets of chapter 162, Florida Statutes. Ms. Kiefer recommended for the Board to adopt certain findings of fact and conclusions of law. The Board fully adopted Ms. Kiefer's recommendation.

130. On August 25, 2005, the Board issued an order imposing a $250 daily fine against Schwarz. To date, that fine continues to amass against him and constitutes a lien on 12305 3rd Street.

**The New Notice of Violation**

131. On August 31, 2005, the City served Schwarz with a notice of violation for maintaining an illegal use at 250 115th Avenue, Treasure Island, Florida.

132. The notice alleged that Schwarz was in violation of section 68-221, City of Treasure Island Code of Ordinances. This appeared to be the identical allegation to the one noticed for 12305 3rd Street.

133. A hearing is scheduled to occur before the Board on September 22, 2005. While Schwarz does not know the outcome of this hearing, he has a good faith belief that the City will continue with the same obstructionist tactics it has already employed. Thus, the relief requested herein relates to all of the residences described above.

134. Schwarz, Gulf Coast, John Does I through IV, and Jane Does V through IX have hired the undersigned law firm to represent them in the above-styled cause and are required to pay them a reasonable fee.

135. All conditions precedent to bringing this action have occurred or have been waived.

## RESERVATION OF UNPLED FEDERAL CLAIMS

136. Schwarz, Gulf Coast, and John and Jane Does specifically reserve any and all federal causes of action arising under the United States Constitution that are not specifically pled herein, pursuant to England v. Louisiana State Board of Medical Examiners, 375 U.S. 411 (1994), Fields v. Sarasota-Manatee Airport Authority, 953 F.2d 1299 (11th Cir. 1982), and Jennings v. Caddo Parish School Board, 531 F.2d 1331, (5th Cir. 1976), cert. denied, 429 U.S. 897 (1976).

## -COUNT I-
## DECLARATORY RELIEF UNDER THE FAIR HOUSING ACT

137. Plaintiffs reallege and incorporate paragraphs 1 through 136.

138. This is an action for declaratory relief pursuant to the Federal Fair Housing Act (the "FHA"), title 42 United States Code section 1983 (2004), and title 42 United States Code section 1988 (2004).

139. The residences described above are dwellings as defined by the FHA.

140. John and Jane Does I through IX are handicapped, as defined by the FHA.

141. Through their actions described herein, and others not specifically stated, the City and Board have: (i) failed to provide Plaintiffs with a reasonable accommodation; (ii) imposed rules, regulations, and ordinances that have created a disparate impact on Plaintiffs; and (iii) invidiously discriminated against Plaintiffs.

**(a) Reasonable Accommodation.**

142. The LDC prohibits John and Jane Does from living together in a residence, in any zoning district, located within the City's jurisdictional boundaries. It further prohibits Gulf

Coast and Schwarz from maintaining the residences on behalf of their clients, as described above.

143. The ability to reside in a single-family home with other individuals who are recovering from addictions to alcohol and other controlled substances is necessary to allow Gulf Coast clients to progress through their rehabilitation program.

144. Gulf Coast and Schwarz need to offer the rental component described herein in order to successfully market its out-patient, rehabilitation programs.

145. Gulf Coast and Schwarz, on their behalf and on behalf of their clients, have requested for the City to make a reasonable accommodation to them by: (i) asking for the City and Board to refrain from imposing fines and penalties against them for using the residences, as described herein; (ii) requesting for the City and Board to provide them with the manner in which they can comply with the City's perceived demands; and (iii) seeking that the City and Board allow John and Jane Does to remain at the residences.

146. The City and Board have refused Plaintiffs' requests, and consequently, have denied Plaintiffs a reasonable accommodation under the LDC.

147. Such a refusal violates section 3604(f)(3)(B) of the FHA, which provides that discrimination includes:

> [a] refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.

148. It would be futile for Plaintiffs to make any further requests based on the City's stated course of conduct, as described above.

**(b) Disparate Treatment.**

149. The City and Board have embarked upon a pattern of conduct, as described herein, in an effort to single-out Plaintiffs.

150. The City and Board have discriminated against Gulf Coast and Schwarz because they are renting the residences to seven or more unrelated individuals who are recovering from addictions to alcohol and other, controlled substances.

151. The City and Board are discriminating against Gulf Coast's clients, including John and Jane Does because they are recovering from addictions to alcohol and other, controlled substances.

152. The City and Board would not be engaging in the above-described actions if Gulf Coast and Schwarz were not engaged in their present business operations.

153. The City and Board would not be engaging in the above-described actions if Gulf Coast's clients, including John and Jane Does, were not recovering from addictions to alcohol and other, controlled substances.

154. Through this course of conduct, the City and Board have violated Plaintiffs' rights under the FHA.

**(c) Disparate Impact.**

155. The RM-15 zoning district, and the City's implementation of it has created a disparate impact on Plaintiffs because Gulf Coast's clients, including John and Jane Does do not qualify as a family, as defined in section 68-221,City of Treasure Island Code of Ordinances.

156. RM-15 is a facially neutral zoning ordinance.

157. RM-15 allows "dwelling, residential" as a permitted, principle use. To use property as a dwelling, residential, the landowner must maintain a structure that is "a single-family, two-family, or multiple-family dwelling which is not a tourist dwelling."

158. A single-family dwelling "means a building designed for and/or containing only one dwelling unit." A two-family dwelling "means a building designed for and/or containing two dwelling units." A multi-family dwelling "means a building designed for and/or containing three or more dwelling units."

159. To make a use as a single-family dwelling, two-family dwelling, or multi-family dwelling, the structure must be a dwelling unit, which "means a single unit consisting of not less than 500 square feet of living area providing complete, independent living facilities for ***one family***, including permanent provisions for living, sleeping, eating, cooking and sanitation, but not including recreation vehicles, tents, hotels, motels or boardinghouses."

160. To operate a structure as a dwelling unit, the unit must be occupied by only one family. Under section 68-2, LDC, family is defined as:

> one or more persons occupying a dwelling, not more than three of whom are unrelated to each other by birth, adoption or marriage.

161. The aforementioned ordinances preclude Gulf Coast's clients, including John and Jane Does from residing within the RM-15 zoning district because they are more than three people who are not related by birth, adoption, or marriage.

162. These ordinances, on their face, create a disparate impact by allowing an unlimited number of people who are related by birth, adoption, or marriage to occupy a dwelling unit while prohibiting individuals such as John and Jane Does from residing there based solely on their familial status.

163. RM-15 and the definitions described herein create more stringent requirements on groups of unrelated individuals wishing to live together than on individuals related by blood or marriage. The aforementioned ordinances prohibit Gulf Coast and Schwarz from leasing the residences to their clients.

164. Such a prohibition violates the FHA. Therefore, the Board's orders adjudicating Schwarz guilty of section 68-221 and imposing fines thereon is void. Any further actions taken by the Board would constitute a violation of the FHA.

165. The City disputes all of the contentions described herein. Thus, a true and genuine controversy exists that necessitates this Court's adjudication.

166. Plaintiffs have been required to retain the undersigned firm and are obligated to pay them a fee.

**WHEREFORE**, Plaintiffs respectfully request for this Court to grant them the following relief:

a. Declare that the residences described herein are dwellings;

b. Declare that John and Jane Does are handicapped;

c. Declare that the City has failed to provide Plaintiffs with a reasonable accommodation;

d. Declare that the City has invidiously discriminated against Plaintiffs;

e. Declare that the City's ordinances have disparately impacted Plaintiffs;

f. Declare that the Board's orders dated August 10, 2005 and August 25, 2005 are void because they violate the FHA;

g. Declare that the Board cannot take any further actions against Plaintiffs for operating or residing in the residences described herein;

h. Award Plaintiffs their costs and attorney's fees in bringing this action;

i. Award Plaintiffs any further relief that this Court deems just and appropriate.

## -COUNT II-
## INJUNCTIVE RELIEF UNDER THE FAIR HOUSING ACT

167. Plaintiffs reallege and incorporate paragraphs 1 through 136 and 139 through 164.

168. This is an action for injunctive relief pursuant to the FHA, title 42 United States Code section 1983, and title 42 United States Code section 1988.

169. Plaintiffs are being, and will continue to be, irreparably harmed by the actions of the City and the Board.

170. Plaintiffs have a clear legal right to relief.

171. Plaintiffs have no adequate remedy at law.

172. It is in the public interest to enjoin the City and the Board from taking any further actions against Plaintiffs that would violate the FHA.

**WHEREFORE**, Plaintiffs respectfully request for this Court to grant them the following relief:

a. Declare that the residences described herein are dwellings;

b. Declare that John and Jane Does are handicapped;

c. Declare that the City has failed to provide Plaintiffs with a reasonable accommodation;

d. Declare that the City has discriminated against Plaintiffs;

e. Declare that the City's ordinances have disparately impacted Plaintiffs;

f. Declare that the Board's orders dated August 10, 2005 and August 25, 2005 are void because they violate the FHA;

g. Enjoin the enforcement of the Board's orders;

h. Enjoin the City from taking any further action against Plaintiffs;

i. Award Plaintiffs costs and a reasonable attorney's fee;

j. Award Plaintiffs any further relief that this Court deems just and appropriate under the circumstances.

## -COUNT III-
## DAMAGES UNDER THE FAIR HOUSING ACT

173. Plaintiffs reallege and incorporate paragraphs 1 through 136 and 139 through 164.

174. This is an action for damages pursuant to the FHA, title 42 United States Code section 1983, and title 42 United States Code section 1988.

175. Through their actions described herein, the City and Board have interfered with the recovery programs that Gulf Coast offers its clients. Gulf Coast has suffered damages including, but not limited, to: (i) loss of business reputation; (ii) loss of potential clients; (iii) loss of existing clients; (iv) increased business costs; (v) moving expenses; (vi) attorney's fees; (vii) costs; and (viii) loss of business productivity among staff members. Schwarz, as the owner of some of these properties, has suffered similar damages.

176. Through their actions described herein, the City and Board have caused John and Jane Does to suffer from, but not limited to: (i) emotional stress; (ii) embarrassment; (iii) potential relapse into alcoholism and drug addition; and (iv) homelessness.

177. The City and the Board have acted with reckless indifference to the FHA and its protections afforded to Gulf Coast, Schwarz, their clients, and John and Jane Does. The City's and the Board's conduct is malicious.

**WHEREFORE**, Plaintiffs respectfully request for this Court to grant them compensatory damages, nominal damages, special damages, punitive damages based on a showing of malicious conduct on the City's and Board's part, court costs, pre- and post- judgment interest, and their attorney's fees in bringing this action.

## -COUNT IV-
## DECLARATORY RELIEF UNDER THE AMERICANS WITH DISABILITIES ACT

178. Plaintiffs reallege and incorporate paragraphs 1 through 136.

179. This is an action for declaratory relief pursuant to Title II, the Americans with Disabilities Act, title 42 United States Code section 12132 (2004) (the "ADA"), title 42 United States Code section 1983, and title 42 United States Code section 1988.

180. The residences described above are dwellings as defined by the ADA.

181. John and Jane Does I through IX are disabled, as defined by the ADA.

182. Through their actions described herein, and others not specifically stated, the City and Board have: (i) failed to provide Plaintiffs with a reasonable accommodation; (ii) imposed rules, regulations, and ordinances that have created a disparate impact on Plaintiffs; and (iii) invidiously discriminated against Plaintiffs.

**(a) Reasonable Accommodation.**

183. The LDC prohibits John and Jane Does from living together in any residence located within the City's jurisdictional boundaries. It further prohibits Gulf Coast and Schwarz from maintaining the residences on behalf of their clients, as described above.

184. The ability to reside in a single-family home with other individuals who are recovering from addictions to alcohol and other controlled substances is necessary to allow Gulf Coast clients to progress through their rehabilitation program.

185. Gulf Coast and Schwarz needs to offer the rental component described herein in order to successfully market its out-patient, rehabilitation programs.

186. Gulf Coast and Schwarz, on their behalf and on behalf of their clients, have requested for the City to make a reasonable accommodation to them by: (i) asking for the City and Board to refrain from imposing fines and penalties against them for using the residences, as described herein; (ii) requesting for the City and Board to provide them with the manner in

which they can comply with the City's perceived demands; and (iii) seeking that the City and Board allow John and Jane Does to remain at the residences.

187. The City and Board have refused Plaintiffs' requests, and consequently, have denied Plaintiffs a reasonable accommodation under the LDC.

188. Such a refusal violates, among other provisos, section 12132 of the ADA, which provides:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

189. It would be futile for Plaintiffs to make any further requests based on the City's stated course of conduct, as described above.

**(b) Disparate Treatment.**

190. The City and Board have embarked upon a pattern of conduct, as described herein, in an effort to single-out Plaintiffs.

191. The City and Board have discriminated against Gulf Coast and Schwarz because they are renting the residences to seven or more unrelated individuals who are recovering from addictions to alcohol and other, controlled substances.

192. The City and Board are discriminating against Gulf Coast's clients, including John and Jane Does because they are recovering from addictions to alcohol and other, controlled substances.

193. The City and Board would not be engaging in the above-described actions if Gulf Coast and Schwarz were not engaged in their present business operations.

194. The City and Board would not be engaging in the above-described actions if Gulf Coast's clients, including John and Jane Does, were not recovering from addictions to alcohol and other, controlled substances.

195. Through this course of conduct, the City and Board have violated Plaintiffs' rights under the ADA.

**(c) Disparate Impact.**

196. The RM-15 zoning district, and the City's implementation of it has created a disparate impact on Plaintiffs because Gulf Coast's clients, including John and Jane Does do not qualify as a family, as defined in section 68-2, City of Treasure Island Code of Ordinances.

197. RM-15 is a facially neutral zoning ordinance.

198. RM-15 allows "dwelling, residential" as a permitted, principle use. To use property as a dwelling, residential, the landowner must maintain a structure that is "a single-family, two-family, or multiple-family dwelling which is not a tourist dwelling."

199. A single-family dwelling "means a building designed for and/or containing only one dwelling unit." A two-family dwelling "means a building designed for and/or containing two dwelling units." A multi-family dwelling "means a building designed for and/or containing three or more dwelling units."

200. To make a use as a single-family dwelling, two-family dwelling, or multi-family dwelling, the structure must be a dwelling unit, which "means a single unit consisting of not less than 500 square feet of living area providing complete, independent living facilities for ***one family***, including permanent provisions for living, sleeping, eating, cooking and sanitation, but not including recreation vehicles, tents, hotels, motels or boardinghouses."

201. To operate a structure as a dwelling unit, the unit must be occupied by only one family. Under section 68-2, LDC, family is defined as:

> one or more persons occupying a dwelling, not more than three of whom are unrelated to each other by birth, adoption or marriage.

202. The aforementioned ordinances preclude Gulf Coast's clients, including John and Jane Does from residing within the RM-15 zoning district because they are more than three people who are not related by birth, adoption, or marriage. The aforementioned ordinances prohibit Gulf Coast from leasing the residences to their clients.

203. These ordinances, on their face, create a disparate impact by allowing an unlimited number of people who are related by birth, adoption, or marriage to occupy a dwelling unit while prohibiting individuals such as John and Jane Does from residing there based solely on their familial status.

204. RM-15 and the definitions described herein create more stringent requirements on groups of unrelated individuals wishing to live together than on individuals related by blood or marriage.

205. Such a prohibition violates the ADA. Therefore, the Board's orders adjudicating Schwarz guilty of section 68-221 and imposing fines thereon is void. Any further actions taken by the Board would constitute a violation of the ADA.

206. The City disputes all of the contentions described herein. Thus, a true and genuine controversy exists that necessitates this Court's adjudication.

207. Plaintiffs have been required to retain the undersigned firm and are obligated to pay them a fee.

**WHEREFORE**, Plaintiffs respectfully request for this to grant them the following relief:

a. Declare that the residences described herein are dwellings;

b. Declare that John and Jane Does are handicapped;

c. Declare that the City has failed to provide Plaintiffs with a reasonable accommodation;

d. Declare that the City has invidiously discriminated against Plaintiffs;

e. Declare that the City's ordinances have disparately impacted Plaintiffs;

f. Declare that the Board's orders dated August 10, 2005 and August 25, 2005 are void because they violate the ADA;

g. Declare that the Board cannot take any further actions against Plaintiffs for operating or residing in the residences described herein;

h. Award Plaintiff's their costs and attorney's fees in bringing this action;

i. Award Plaintiffs any further relief that this Court deems just and appropriate.

## -COUNT V-
## INJUNCTIVE RELIEF UNDER THE AMERICANS WITH DISABILITIES ACT

208. Plaintiffs reallege and incorporate paragraphs 1 through 136 and 180 through 205.

209. This is an action for injunctive relief pursuant to the ADA, title 42 United States Code section 1983, and title 42 United States Code section 1988.

210. Plaintiffs are being, and will continue to be, irreparably harmed by the actions of the City and the Board.

211. Plaintiffs have a clear legal right to relief.

212. Plaintiffs have no adequate remedy at law.

213. It is in the public interest to enjoin the City and the Board from taking any further actions against Plaintiffs that would violate the ADA.

**WHEREFORE**, Plaintiffs respectfully request for this Court to grant them the following relief:

a. Declare that the residences described herein are dwellings;

b. Declare that John and Jane Does are disabled;

c. Declare that the City has failed to provide Plaintiffs with a reasonable accommodation;

d. Declare that the City has discriminated against Plaintiffs;

e. Declare that the City's ordinances have disparately impacted Plaintiffs;

f. Declare that the Board's orders dated August 10, 2005 and August 25, 2005 are void because they violate the ADA;

g. Enjoin the enforcement of the Board's orders;

h. Enjoin the City from taking any further action against Plaintiffs;

i. Award Plaintiffs costs and a reasonable attorney's fee;

j. Award Plaintiffs any further relief that this Court deems just and appropriate under the circumstances.

## -COUNT VI-
## DAMAGES UNDER THE AMERICANS WITH DISABILITIES ACT

214. Plaintiffs reallege and incorporate paragraphs 1 through 136 and 180 through 205.

215. This is an action for damages pursuant to the ADA, title 42 United States Code section 1983 (2004), and title 42 United States Code section 1988 (2004).

216. Through their actions described herein, the City and Board have interfered with the recovery programs that Gulf Coast offers its clients. Gulf Coast has suffered damages including, but not limited, to: (i) loss of business reputation; (ii) loss of potential clients; (iii) loss of existing clients; (iv) increased business costs; (v) moving expenses; (vi) attorney's fees; (vii)

costs; and (viii) loss of business productivity among staff members. Schwarz, as the owner of some of these properties, has suffered similar damages.

217. Through their actions described herein, the City and Board have caused John and Jane Does to suffer from, but not limited to: (i) emotional stress; (ii) embarrassment; (iii) potential relapse into alcoholism and drug addition; and (iv) homelessness.

218. The City and the Board have acted with reckless indifference to the ADA and its protections afforded to Gulf Coast, Schwarz, their clients, and John and Jane Does. The City's and the Board's conduct is malicious.

**WHEREFORE**, Gulf Coast and Schwarz respectfully request for this Court to grant them compensatory damages, nominal damages, special damages, punitive damages based on a showing of malicious conduct on the City's and Board's part, court costs, pre- and post-judgment interest, and their attorney's fees in bringing this action.

## -COUNT VII-
## DECLARATORY RELIEF UNDER THE REHABILITATION ACT

219. Plaintiffs reallege and incorporate paragraphs 1 through 136.

220. This is an action for declaratory relief pursuant to section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), title 42 United States Code section 1983, and title 42 United States Code section 1988.

221. John and Jane Does I through IX are handicapped, as defined by the Rehabilitation Act.

222. The City receives federal financial assistance.

223. Through their actions described herein, and others not specifically stated, the City and Board have: (i) failed to provide Plaintiffs with a reasonable accommodation; (ii) imposed

rules, regulations, and ordinances that have created a disparate impact on Plaintiffs; and (iii) invidiously discriminated against Plaintiffs.

**(a) Reasonable Accommodation.**

224. The LDC prohibits John and Jane Does from living together in a residence, in any zoning district, located within the City's jurisdictional boundaries. It further prohibits Gulf Coast and Schwarz from maintaining the residences on behalf of their clients, as described above.

225. The ability to reside in a single-family home with other individuals who are recovering from addictions to alcohol and other controlled substances is necessary to allow Gulf Coast clients to progress through their rehabilitation program.

226. Gulf Coast and Schwarz need to offer the rental component described herein in order to successfully market its out-patient, rehabilitation programs.

227. Gulf Coast and Schwarz, on their behalf and on behalf of their clients, have requested for the City to make a reasonable accommodation to them by: (i) asking for the City and Board to refrain from imposing fines and penalties against them for using the residences, as described herein; (ii) requesting for the City and Board to provide them with the manner in which they can comply with the City's perceived demands; and (iii) seeking that the City and Board allow John and Jane Does to remain at the residences.

228. The City and Board have refused Plaintiffs' requests, and consequently, have denied Plaintiffs a reasonable accommodation under the LDC.

229. Such a refusal violates section 504 of the Rehabilitation Act, which provides:

> No otherwise qualified individual with handicaps…shall, solely by reason of his handicap be excluded from the participation in, be denied the benefits of, or

subjected to discrimination under any program or activity receiving federal financial assistance.

230. It would be futile for Plaintiffs to make any further requests based on the City's stated course of conduct, as described above.

**(b) Disparate Treatment.**

231. The City and Board have embarked upon a pattern of conduct, as described herein, in an effort to single-out Plaintiffs.

232. The City and Board have discriminated against Gulf Coast and Schwarz because they are renting the residences to seven or more unrelated individuals who are recovering from addictions to alcohol and other, controlled substances.

233. The City and Board are discriminating against Gulf Coast's clients, including John and Jane Does because they are recovering from addictions to alcohol and other, controlled substances.

234. The City and Board would not be engaging in the above-described actions if Gulf Coast and Schwarz were not engaged in their present business operations.

235. The City and Board would not be engaging in the above-described actions if Gulf Coast's clients, including John and Jane Does, were not recovering from addictions to alcohol and other, controlled substances.

236. Through this course of conduct, the City and Board have violated Plaintiffs' rights under the FHA.

**(c) Disparate Impact.**

237. The RM-15 zoning district, and the City's implementation of it has created a disparate impact on Plaintiffs because Gulf Coast's clients, including John and Jane Does do not qualify as a family, as defined in section 68-221,City of Treasure Island Code of Ordinances.

238. RM-15 is a facially neutral zoning ordinance.

239. RM-15 allows "dwelling, residential" as a permitted, principle use. To use property as a dwelling, residential, the landowner must maintain a structure that is "a single-family, two-family, or multiple-family dwelling which is not a tourist dwelling."

240. A single-family dwelling "means a building designed for and/or containing only one dwelling unit." A two-family dwelling "means a building designed for and/or containing two dwelling units." A multi-family dwelling "means a building designed for and/or containing three or more dwelling units."

241. To make a use as a single-family dwelling, two-family dwelling, or multi-family dwelling, the structure must be a dwelling unit, which "means a single unit consisting of not less than 500 square feet of living area providing complete, independent living facilities for ***one family***, including permanent provisions for living, sleeping, eating, cooking and sanitation, but not including recreation vehicles, tents, hotels, motels or boardinghouses."

242. To operate a structure as a dwelling unit, the unit must be occupied by only one family. Under section 68-2, LDC, family is defined as:

> one or more persons occupying a dwelling, not more than three of whom are unrelated to each other by birth, adoption or marriage.

243. The aforementioned ordinances preclude Gulf Coast's clients, including John and Jane Does from residing within the RM-15 zoning district because they are more than three people who are not related by birth, adoption, or marriage.

244. These ordinances, on their face, create a disparate impact by allowing an unlimited number of people who are related by birth, adoption, or marriage to occupy a dwelling unit while prohibiting individuals such as John and Jane Does from residing there based solely on their familial status.

245. RM-15 and the definitions described herein create more stringent requirements on groups of unrelated individuals wishing to live together than on individuals related by blood or marriage. The aforementioned ordinances prohibit Gulf Coast and Schwarz from leasing the residences to their clients.

246. Such a prohibition violates the Rehabilitation Act. Therefore, the Board's orders adjudicating Schwarz guilty of section 68-221 and imposing fines thereon is void. Any further actions taken by the Board would constitute a violation of the Rehabilitation Act.

247. The City disputes all of the contentions described herein. Thus, a true and genuine controversy exists that necessitates this Court's adjudication.

248. Plaintiffs have been required to retain the undersigned firm and are obligated to pay them a fee.

**WHEREFORE**, Plaintiffs respectfully request for this to grant them the following relief:

j. Declare that the residences described herein are dwellings;

k. Declare that John and Jane Does are handicapped;

l. Declare that the City has failed to provide Plaintiffs with a reasonable accommodation;

m. Declare that the City has invidiously discriminated against Plaintiffs;

n. Declare that the City's ordinances have disparately impacted Plaintiffs;

o. Declare that the Board's orders dated August 10, 2005 and August 25, 2005 are void because they violate the Rehabilitation Act;

p. Declare that the Board cannot take any further actions against Plaintiffs for operating or residing in the residences described herein;

q. Award Plaintiffs their costs and attorney's fees in bringing this action;

r. Award Plaintiffs any further relief that this Court deems just and appropriate.

## -COUNT VIII-
## INJUNCTIVE RELIEF UNDER THE REHABILITATION ACT

249. Plaintiffs reallege and incorporate paragraphs 1 through 136 and 221 through 246.

250. This is an action for injunctive relief pursuant to the Rehabilitation Act, title 42 United States Code section 1983, and title 42 United States Code section 1988.

251. Plaintiffs are being, and will continue to be, irreparably harmed by the actions of the City and the Board.

252. Plaintiffs have a clear legal right to relief.

253. Plaintiffs have no adequate remedy at law.

254. It is the public interest to enjoin the City and the Board from taking any further actions against Plaintiffs that would violate the Rehabilitation Act.

**WHEREFORE**, Plaintiffs respectfully request for this Court to grant them the following relief:

a. Declare that the residences described herein are dwellings;

b. Declare that John and Jane Does are disabled;

c. Declare that the City has failed to provide Plaintiffs with a reasonable accommodation;

d. Declare that the City has discriminated against Plaintiffs;

e. Declare that the City's ordinances have disparately impacted Plaintiffs;

f. Declare that the Board's orders dated August 10, 2005 and August 25, 2005 are void because they violate the Rehabilitation Act;

g. Enjoin the enforcement of the Board's orders;

h. Enjoin the City from taking any further action against Plaintiffs;

i. Award Plaintiffs costs and a reasonable attorney's fee;

j. Award Plaintiffs any further relief that this Court deems just and appropriate under the circumstances.

## -COUNT IX-
## DAMAGES UNDER THE REHABILITATION ACT

255. Plaintiffs reallege and incorporate paragraphs 1 through 136 and 221 through 246.

256. This is an action for damages pursuant to the Rehabilitation Act, title 42 United States Code section 1983, and title 42 United States Code section 1988.

257. Through their actions described herein, the City and Board have interfered with the recovery programs that Gulf Coast offers its clients. Gulf Coast has suffered damages including, but not limited, to: (i) loss of business reputation; (ii) loss of potential clients; (iii) loss of existing clients; (iv) increased business costs; (v) moving expenses; (vi) attorney's fees; (vii) costs; and (viii) loss of business productivity among staff members. Schwarz, as the owner of some of these properties, has suffered similar damages.

258. Through their actions described herein, the City and Board have caused John and Jane Does to suffer from, but not limited to: (i) emotional stress; (ii) embarrassment; (iii) potential relapse into alcoholism and drug addition; and (iv) homelessness.

259. The City and the Board have acted with reckless indifference to the Rehabilitation Act and its protections afforded to Gulf Coast, Schwarz, their clients, and John and Jane Does. The City's and the Board's conduct is malicious.

**WHEREFORE**, Gulf Coast and Schwarz respectfully request for this Court to grant them compensatory damages, nominal damages, special damages, court costs, pre- and post-judgment interest, and their attorney's fees in bringing this action.

**-COUNT X-**
**DECLARATORY RELIEF FOR VIOLATION OF EQUAL PROTECTION CLAUSE UNDER THE FLORIDA CONSTITUTION**

260. Plaintiffs reallege and incorporate paragraphs 1 through 136.

261. This is an action for declaratory relief pursuant to chapter 86, Florida Statutes for the violation of Plaintiffs' rights to equal protection under the Florida Constitution.

262. Through their actions described above, Defendants have discriminated against Gulf Coast's clients, including John and Jane Does, because they are recovering from addictions to alcohol and other, controlled substances. Other individuals reside in the RM-15 zoning district who are not recovering from addictions to alcohol and other, controlled substances. The City is not engaging in the same course of conduct against those other individuals that it is against Gulf Coast clients, including John and Jane Does.

263. The City and the Board are discriminating against Gulf Coast and Schwarz because they are renting the residence to recovering alcoholics and drug addicts. The City and Board are discriminating against Gulf Coast and Schwarz because they are renting the residences described herein to a group of unrelated persons. Other property owners within the RM-15 zoning district lease their properties to individuals, such as tourist or vacation-goers. The City and the Board are not citing these owners for violation of the LDC like they are citing Gulf Coast and Schwarz.

264. There is no rational basis for the City's and Board's course of conduct.

265. There is no material difference between Schwarz, Gulf Coast, their clients, and John and Jane Does and the other unnamed individuals who reside within the RM-15 zoning districts. The only difference between these individuals and the Gulf Coast clients is the disability and handicap from which the said clients suffer.

266. Defendants have discriminated against Gulf Coast's clients, including John and Jane Does based on their handicaps and disabilities, as described herein.

267. But for the Plaintiffs' status, Defendants would not be engaging in their present course of conduct.

268. The City and Board dispute these contentions. Thus, a true and genuine controversy exists that necessitates this Court's adjudication.

**WHEREFORE**, Plaintiffs respectfully request for this Court to grant them the following relief:

a. Declare that there is no material difference between Gulf Coast's clients and the other individuals who are living through the RM-15 zoning districts;

b. Declare that there is no material difference between Gulf Coast and Schwarz and other property owners within the RM-15 zoning districts;

c. Declare that the City and Board are discriminating against Plaintiffs because of their status as recovering addicts from alcohol or other, controlled substances, or are involved in the rehabilitation business;

d. Declare that this treatment bears no rational basis to any public purpose;

e. Declare that the City's and Board's conduct is unlawful and in violation of the equal protection clause under the Florida Constitution;

f. Declare that the Board's actions against Schwarz and Gulf Coast are illegal and void for violating the equal protection clause;

g. Declare that the August 10, 2005 and August 25, 2005 orders are void;

h. Award Plaintiffs their costs in bringing this action;

i. Grant any further relief that this Court deems just and appropriate under the circumstances.

**-COUNT XI-**
**DECLARATORY RELIEF FOR VIOLATION OF EQUAL PROTECTION CLAUSE UNDER THE UNITED STATES CONSTITUTION**

269. Plaintiffs reallege and incorporate paragraphs 1 through 136 and 262 through 268.

270. This is an action for declaratory relief pursuant to title 42 United States Code section 1983 and title 42 United States Code section 1988 for the violation of Plaintiffs' equal protection rights under the Fourteenth Amendment to the United States Constitution.

271. Plaintiffs have been required to hire the undersigned firm and are obligated to pay it a fee.

**WHEREFORE**, Plaintiffs respectfully request for this Court to grant them the following relief:

a. Declare that there is no material difference between Gulf Coast's clients and the other individuals who are living through the RM-15 zoning districts;

b. Declare that there is no material difference between Gulf Coast and Schwarz and other property owners within the RM-15 zoning districts;

c. Declare that the City and Board are discriminating against Plaintiffs because of their status as recovering addicts from alcohol or other, controlled substances, or are involved in the rehabilitation business;

d. Declare that this treatment bears no rational basis to any public purpose;

e. Declare that the City's and Board's conduct is unlawful and in violation of the equal protection clause under the Florida Constitution;

f. Declare that the Board's actions against Schwarz and Gulf Coast are illegal and void for violating the equal protection clause;

g. Declare that the August 10, 2005 and August 25, 2005 orders are void;

h. Award Plaintiffs their costs in bringing this action;

i. Award Plaintiffs a reasonable attorney's fee in bringing this action;

j. Grant any further relief that this Court deems just and appropriate under the circumstances.

**-COUNT XII-**
**DAMAGES FOR VIOLATION OF EQUAL PROTECTION CLAUSE UNDER THE UNITED STATES CONSTITUTION**

272. Plaintiffs reallege and incorporate paragraphs 1 through 136 and 262 through 268.

273. As are result of the foregoing activities, Plaintiffs have been damaged.

274. Plaintiffs have been required to retain the undersigned lawfirm and are obligated to pay them a reasonable attorney's fee.

**WHEREFORE**, Gulf Coast and Schwarz respectfully request for this Court to grant them compensatory damages, nominal damages, special damages, court costs, pre- and post-judgment interest, and their attorney's fees in bringing this action.

**-COUNT XIII-**
**INJUNCTIVE RELIEF FOR VIOLATION OF EQUAL PROTECTION CLAUSE UNDER THE FLORIDA CONSTITUTION**

275. Plaintiffs reallege and incorporate paragraphs 1 through 136 and 262 through 268.

276. This is an action for injunctive relief for the violation of Plaintiffs' rights to equal protection of the law under the Florida Constitution.

277. Plaintiffs have a clear legal right to the relief requested herein.

278. Plaintiffs have no adequate remedy at law.

279. Plaintiffs are, and will continue to be, irreparably harmed by the City's and Board's actions.

280. It is in the public interest to enjoin the City and the Board from acting any further in violation Plaintiffs' rights to equal protection under the laws.

**WHEREFORE**, Plaintiffs respectfully request that this Court grant them the following relief:

a. Find that there is no material difference between Gulf Coast's clients and the other individuals who are living through the RM-15 zoning districts;

b. Find that there is no material difference between Gulf Coast and Schwarz and other property owners within the RM-15 zoning districts;

c. Find that the City and Board are discriminating against Plaintiffs because of their status as recovering addicts from alcohol or other, controlled substances, or are involved in the rehabilitation business;

d. Find that this treatment bears no rational basis to any public purpose;

e. Find that the City's and Board's conduct is unlawful and in violation of the equal protection clause under the Florida Constitution;

f. Find that the Board's actions against Schwarz and Gulf Coast are illegal and void for violating the equal protection clause;

g. Find that the August 10, 2005 and August 25, 2005 orders are void;

h. Enjoin the enforcement of the August 10, 2005 and August 25, 2005 orders;

i. Enjoin the City and the Board from taking any further action against Plaintiffs;

j. Enjoin the Board from conducting any further hearings concerning Gulf Coast and Schwarz for an alleged violation similar to the one described above;

k. Award Plaintiffs their costs in bringing this action;

l. Grant any further relief that this Court deems just and appropriate under the circumstances.

**-COUNT XIV-**
**INJUNCTIVE RELIEF FOR VIOLATION OF EQUAL PROTECTION CLAUSE UNDER THE UNITED STATES CONSTITUTION**

281. Plaintiffs reallege and incorporate paragraphs 1 through 136 and 262 through 268.

282. This is an action for injunctive relief pursuant to title 42 United States Code section 1983 and title 42 United States Code section 1988 for the violation of Plaintiffs' rights to equal protection of the laws under the Fourteenth Amendment to the United Constitution.

283. Plaintiffs have been required to hire the undersigned lawfirm and are obligated to pay them a reasonable attorney's fee.

**WHEREFORE,** Plaintiffs respectfully request that this Court grant them the following relief:

a. Find that there is no material difference between Gulf Coast's clients and the other individuals who are living through the RM-15 zoning districts;

b. Find that there is no material difference between Gulf Coast and Schwarz and other property owners within the RM-15 zoning districts;

c. Find that the City and Board are discriminating against Plaintiffs because of their status as recovering addicts from alcohol or other, controlled substances, or are involved in the rehabilitation business;

d. Find that this treatment bears no rational basis to any public purpose;

e. Find that the City's and Board's conduct is unlawful and in violation of the equal protection clause under the Florida Constitution;

f. Find that the Board's actions against Schwarz and Gulf Coast are illegal and void for violating the equal protection clause;

g. Find that the August 10, 2005 and August 25, 2005 orders are void;

h. Enjoin the enforcement of the August 10, 2005 and August 25, 2005 orders;

i. Enjoin the City and the Board from taking any further action against Plaintiffs;

j. Enjoin the Board from conducting any further hearings concerning Gulf Coast and Schwarz for an alleged violation similar to the one described above;

k. Award Plaintiffs their costs in bringing this action;

l. Award Plaintiffs a reasonable attorney's fee;

m. Grant any further relief that this Court deems just and appropriate under the circumstances.

## -COUNT XV-
## DECLARATORY RELIEF FOR VIOLATION OF PROCEDURAL DUE PROCESS UNDER FLORIDA CONSTITUTION

284. Plaintiffs reallege and incorporate paragraphs 1 through 136.

285. This is a claim for declaratory relief pursuant to chapter 86, Florida Statutes for violation of Plaintiffs' procedural due process rights under the Article I, section 2 and section 9, Florida Constitution.

286. By their actions described herein, the City and Board have deprived Plaintiffs of their due process rights afforded to them under the Florida Constitution at the August 10, 2005 and August 25, 2005 hearings described herein.

287. The City and Board has deprived Plaintiffs of a meaningful opportunity to be heard.

288. Plaintiffs have certain constitutionally protected interests that are subject to the due process protections of the Florida Constitution.

289. The City and Board dispute these contentions. Thus a true and genuine controversy exists that required this Court's adjudication.

**WHEREFORE**, Plaintiffs respectfully request for this Court to grant them the following relief:

a. Declare that Plaintiffs have constitutionally protected property interest that cannot be deprived without due process of law;

b. Declare that the City and Board have deprived Plaintiffs of their constitutionally protected interests without due process of law;

c. Declare that the City and Board have violated Plaintiffs' due process rights under the Florida Constitution;

d. Declare that the City and Board's actions, as described herein are void;

e. Award Plaintiffs their costs in bringing this action;

f. Grant Plaintiffs any further relief that this Court deems just and appropriate.

## -COUNT XVI-
## DECLARATORY RELIEF FOR VIOLATION OF PROCEDURAL DUE PROCESS UNDER UNITED STATES CONSTITUTION

290. Plaintiffs reallege and incorporate paragraphs 1 through 136.

291. This is an action for declaratory relief pursuant to title 42 United States Code section 1983 and title 42 United States Code section 1988 for violation of Plaintiffs' rights to procedural due process under the Fifth and Fourteenth Amendments to the United States Constitution.

292. By their actions described herein, the City and Board have deprived Plaintiffs of their due process rights afforded to them under the United States Constitution at the August 10, 2005 and August 25, 2005 hearings described herein.

293. The City and Board has deprived Plaintiffs of a meaningful opportunity to be heard.

294. Plaintiffs have certain constitutionally protected interests that are subject to the due process protections of the United States Constitution.

295. The City and Board dispute these contentions. Thus a true and genuine controversy exists that required this Court's adjudication.

296. Plaintiffs have hired the undersigned law firm and are required to pay them a fee.

**WHEREFORE**, Plaintiffs respectfully request for this Court to grant them the following relief:

a. Declare that Plaintiffs have constitutionally protected property interest that cannot be deprived without due process of law;

b. Declare that the City and Board have deprived Plaintiffs of their constitutionally protected interests without due process of law;

c. Declare that the City and Board have violated Plaintiffs' due process rights under the United Constitution;

d. Declare that the City and Board's actions, as described herein are void;

e. Award Plaintiffs their costs and attorney's fees in bringing this action;

f. Grant Plaintiffs any further relief that this Court deems just and appropriate.

**-COUNT XVII-**
**INJUNCTIVE RELIEF FOR VIOLATION OF PROCEDURAL DUE PROCESS UNDER FLORIDA CONSTITUTION**

297. Plaintiffs reallege and incorporate paragraphs 1 through 136 and 286 through 288.

298. This is a claim for injunctive relief for violation of Plaintiffs' procedural due process rights under the Article I, section 2 and section 9, Florida Constitution.

299. Plaintiffs have a clear legal right to the relief sought herein.

300. Plaintiffs are without an adequate remedy at law.

301. Plaintiffs will be irreparably harmed if the City's and Board's previous actions and the orders obtained thereon are not enjoined.

302. It is in the public interest to grant Plaintiffs the relief they are requesting.

**WHEREFORE**, Plaintiffs respectfully request for this Court to grant them the following relief:

a. Find that Plaintiffs have constitutionally protected property interest that cannot be deprived without due process of law;

b. Find that the City and Board have deprived Plaintiffs of their constitutionally protected interests without due process of law;

c. Find that the City and Board have violated Plaintiffs' due process rights under the Florida Constitution;

d. Find that the City and Board's actions, as described herein are void;

e. Enjoin the Board's August 10, 2005 and August 25, 2005 orders;

f. Award Plaintiffs their costs in bringing this action;

g. Grant Plaintiffs any further relief that this Court deems just and appropriate.

**-COUNT XVIII-**
**INJUNCTIVE RELIEF FOR VIOLATION OF PROCEDURAL DUE PROCESS UNDER UNITED STATES CONSTITUTION**

303. Plaintiffs reallege and incorporate paragraphs 1 through 136 and 292 through 294.

304. This is a claim for injunctive relief pursuant to title 42 United States Code section 1983 and title 42 United States Code section 1988 for violation of Plaintiffs procedural due process rights under the Fifth and Fourteenth Amendments to the United States Constitution.

305. Plaintiffs have a clear legal right to the relief sought herein.

306. Plaintiffs are without an adequate remedy at law.

307. Plaintiffs will be irreparably harmed if the City's and Board's previous actions and the orders obtained thereon are not enjoined.

308. It is in the public interest to grant Plaintiffs the relief they are requesting.

309. Plaintiffs have retained the undersigned lawfirm and are required to pay them a reasonable attorney's fee.

**WHEREFORE**, Plaintiffs respectfully request for this Court to grant them the following relief:

a. Find that Plaintiffs have constitutionally protected property interest that cannot be deprived without due process of law;

b. Find that the City and Board have deprived Plaintiffs of their constitutionally protected interests without due process of law;

c. Find that the City and Board have violated Plaintiffs' due process rights under the United States Constitution;

d. Find that the City and Board's actions, as described herein are void;

e. Enjoin the Board's August 10, 2005 and August 25, 2005 orders;

f. Award Plaintiffs their costs and attorney fees in bringing this action;

g. Grant Plaintiffs any further relief that this Court deems just and appropriate.

**-COUNT XIX-**
**DAMAGES FOR VIOLATION OF PROCEDURAL DUE PROCESS UNDER UNITED STATES CONSTITUTION**

310. Plaintiffs reallege and incorporate paragraphs 1 through 136 and 292 through 294.

311. This is a claim for damages pursuant to title 42 United States Code section 1983 and title 42 United States Code section 1988 for violation of Plaintiffs procedural due process rights under the Fifth and Fourteenth Amendments to the United States Constitution.

312. As a result of the City's and Board's actions, Plaintiffs have been damaged.

313. Plaintiffs have been required to hire the undersigned law firm and are required to pay them a reasonable fee.

**WHEREFORE**, Plaintiffs respectfully request for this Court to grant them compensatory damages, nominal damages, special damages, court costs, pre- and post- judgment interest, and their attorney's fees in bringing this action.

**-COUNT XX-**
**APPEAL PURSUANT TO SECTION 162.11, FLORIDA STATUTES**

**INTRODUCTION**

314. This is an appeal of the August 10, 2005 Board order. It is brought pursuant to section 162.11, Florida Statutes, Article V, section 5(b), Florida Constitution (1967) and section 26.012(1), Florida Statutes (2005). This Court has pendent jurisdiction to hear this Count pursuant to title 28 United States Code section 1367.

315. Reference to the record of the proceedings below is by the abbreviation "R. at" and the page number of the record, e.g., "R. at 10."

316. Because Schwarz was not entitled to enter any documents into evidence at the August 10, 2005 hearing (R. at 186), this petition is limited to that extent, and, for the reasons stated hereunder, the Board's denial constitutes a procedural due process violation.

## FACTS

317. Matthews Schwarz ("Schwarz") is a natural person residing in Pinellas County, Florida. (R. at 125). Schwarz founded Gulf Coast Recovery, Incorporated ("Gulf Coast") in 2003 to provide outstanding, rehabilitative services to those individuals needing professional assistance to overcome addictions to alcohol and other controlled substances. (R. at 279–281). Gulf Coast is licensed by the Florida Department of Children and Families ("DCF") to conduct business in Florida and maintains its principle place of business in Treasure Island, Florida. (R. at 279–281).

318. In or about 2004, Schwarz began to lease a residence, which was, and remains located at 12305 3rd Street, Treasure Island, Florida ("12305 3rd Street"). (R. at 9). It is a single-family residence with a separate "mother-in-law" unit. ~~Schwarz owns 12305 3rd Street.~~ (R. at 125). 12305 3rd Street has a total of four bedrooms and has a private boat dock located at its rear portion. (R. at 263). It is surrounded on all sides by multi-family dwellings. (R. at 263).

319. 12305 3rd Street is zoned RM-15 under the City's Land Development Code. (R. at 7). The list of permitted uses under the RM-15 zoning district are as follows: (i) Dwelling, residential; (ii) Public park and public recreation areas; (iii) Home occupations in dwelling units as defined in section 68-493; (iv) Group homes licensed by the state department of health and rehabilitation excluding ACLF's;[3] (v) Telecommunication antennas attached to existing

[3] A Group Home is defined in the LDC as follows:

> As licensed by the state department of children and family services, means a residential family living environment with supervision for six or less people. This is not considered a commercial

structures which comply with section 68-465 are prohibited; (vi) Public education facilities; and (vii) Community residential homes.[4] (R. at 254). The listed special exception uses under the RM-15 are as follows: (i) Essential services; (ii) Multiuse private docks; and (iii) Private yacht clubs. (R. at 255). The list of accessory uses under RM-15 is: (i) private swimming pools; (ii) other accessory uses customarily incidental to a permitted use or approved special exception use not involving the conduct of business and as limited by the provisions of article VII of this chapter; (iii) Private docks; and (iv) Parking lots and parking garages. (R. at 255).

320. On or about July 8, 2005, the City served Schwarz with a notice of violation claiming that he was using 12305 3rd Street in violation of section 68-221, City of Treasure Island Code of Ordinances. (R. at 253–255).

321. The notice did not specifically state the alleged, illegal, ongoing use at 12305 3rd Street; nevertheless, the City demanded that Schwarz cease the use at 12305 3rd Street. (R. at 254–255). The City threatened to conduct a hearing before the Board to adjudicate the alleged violation. (R. at 254–255).

322. On July 26, 2005, the City served Schwarz with a notice to appear before the Board on August 10, 2005 to determine whether he was in violation of section 68-221, City of

---

> use. Such a home is for persons who do not require special provisions for emergency evacuation. In addition, no such home may be located within 1,000 feet of another existing group home, with the said distance to be measured in a straight line from the nearest point of the property line of the existing home to the nearest point of the property line of the proposed home.

[4] A community residential home is defined in the LDC as follows:

> As defined in F.S. § 419.001, means "a dwelling unit licensed to serve clients of the state department of children and family services, which provides a living environment for seven to 14 unrelated residents who operate as the functional equivalent of a family, including such supervision and care by supportive staff as may be necessary to meet the physical, emotional, and social needs of the residents." This term may include adult congregate living facilities (ACLFs), assisted living facilities (ALFs), and other comparable care and rehabilitative facilities meeting the statutory definition, distance and separation requirements (1,200 feet from another existing community residential home, and not within 500 feet of a single-family residential district). This category is restricted to persons who do not require special provisions for emergency evacuation.

Treasure Island Code of Ordinances. (R. at 115). Included therein was a signed subpoena for Schwarz to appear at a hearing before the Board. (R. at 115). The subpoena demanded for Schwarz to provide copies of leases for 12305 3rd Street. (R. at 115). Those leases contained confidential information relating to Gulf Coast's clients. (R. at 115). Although Schwarz did not want to provide these documents for fear of violating certain federal and state laws governing client confidentiality, he did provide redacted versions of leases to avoid being held in contempt of the Board's subpoena. (R. at 325–392).

323. Upon receipt of the July 26, 2005 notice, Schwarz propounded a public records request to the City so that he could prepare for the August 10, 2005 hearing. (R. at 94–95). Schwarz did so because he had no other means to prepare for the August 10, 2005 hearing. Schwarz requested such documents from various City staff members, Mayor Mary Maloof, and the City Commissioners. (R. at 94–95). Schwarz did so based on the comments that Mayor Maloof, the City Commissioners, and the City's staff made during various public hearings. (R. at 94–95).

324. Schwarz requested such documents to be produced on or before August 2, 2005 so that he could adequately prepare for the August 10, 2005 hearing. (R. at 94–95).

325. On or about August 8, 2005, Ms. Kiefer contacted Schwarz. (R. at 95). She stated that the public records request was overly broad and demanded for Schwarz to narrow it. (R. at 95).

326. Schwarz, through his counsel, contacted Ms. Kiefer, threatened to sue the City, and demanded the public records before the August 10, 2005 hearing. (R. at 95).

327. The City began to immediately search for the requested public records. (R. at 95). Many City's staff members commenced work to unearth the requested documents. Plaintiffs believe that the City's procrastination was a targeted effort to discriminate against them.

328. The City did not provide Schwarz with the public records until the morning of the hearing. (R. at 96).

329. Upon review and inspection, Schwarz realized that the City had not provided him with copies of all requested documents. (R. at 96).

330. On or about August 10, 2005, the Board conducted a hearing. (1–251). There, surrounding neighbors appeared. (R. at 72–87). Bay News 9, a local, independent news agency, attended the hearing in order to provide coverage to those individuals who could not attend the hearing. (R. at 173).

331. Mayor Maloof and Commissioner Collins appeared as well. (R. at 179). Individuals from the audience passed by Schwarz and told him that they were going to take all measures necessary to stop him from renting any residence on Treasure Island to recovering alcoholics or substance abusers. (R. at 72–87).

332. The City's code enforcement inspector, Ms. Kitts, was supposed to serve as the prosecutor. With the assistance of Ms. Kiefer, Ms. Kitts commenced the hearing with a brief opening statement. (R. at 7–20).

333. Thereafter, Ms. Kitts did not substantively speak at the hearing again. (R. at 21–251). This is because Ms. Kiefer acted for Ms. Kitts as the prosecutor.

334. Under existing law, Ms. Kiefer, was required to sit as the advisor to the Board. At the hearing, Ms. Kiefer did not sit as only the advisor to the Board; she also acted as the prosecutor by trying to prove the existence of the claimed violation. Ms. Kiefer conceded as

much at the outset of the hearing when she stated her role to the Board: "I will be focused on any witnesses on behalf of the petitioner [the City]." (R. at 22).

335. The City, through Ms. Kiefer, called certain witnesses to testify. (R. at 22–71). The first witness that the City called was Mr. James Gostree, who lives adjacent to 12305 3rd Street. (R. at 22–29). Mr. Gostree provided a brief statement (R. at 22–29); thereafter, Ms. Kiefer elicited testimony from him. (R. at 29–31). Following her direct examination, Ms. Kiefer inquired of the Board as to whether they had any questions for Mr. Gostree. (R. at 31).

336. The Board inquired of Mr. Gostree. (R. at 31–34). Then, Schwarz, through his attorney, attempted to cross-examine Mr. Gostree. (R. at 35). First, Schwarz objected to Ms. Kiefer's two-sided role as the prosecutor and Board advisor. (R. at 35–36). Before Schwarz could preserve his objections for the record, the Board and Ms. Kiefer threatened Schwarz's attorney with arrest. (R. at 36). Specifically, Ms. Kiefer stated "I will call the police. I will call the police to have them quiet you…." (R. at 36).

337. Schwarz's attorney cautioned Ms. Kiefer that she was violating Schwarz's due process rights. (R. at 36–37). Ms. Kiefer ignored this cautionary statement and merely stated that Schwarz could appeal her action to a court of competent jurisdiction. (R. at 36–37).

338. One of the Board's members, Mr. Glenn Kaisner, then threatened Schwarz's attorney that if he did not "conduct business in a mannerly way, that the Board would ask him to leave." (R. at 37).

339. Following this exchange, Ms. Kiefer, again, injected comment and directed Schwarz's attorney to question Mr. Gostree. (R. at 38). Again, it was requested for Ms. Kiefer to clarify whether she was acting as the Board's attorney or whether she was acting as the

prosecutor. (R. at 38). Ms. Kiefer responded: "You're not allowed to question the [City] attorney." (R. at 38).

340. The Board's chairman, Mr. Lenny Kaul, echoed: "You're not allowed to make that question [whether Ms. Kiefer was acting as a prosecutor]. You're up here right now. You can ask a question of this witness if you'd like to. If you don't have any questions for this witness, I'd ask you to sit down." (R. at 39).

341. Schwarz, again, tried to make an objection to Ms. Kiefer's role—prosecutor for the City and advisor to the Board. (R. at 39). Thereafter, Ms. Kiefer stated that the objection was noted and demanded for Schwarz's attorney to move on with his cross examination of Mr. Gostree. (R. at 39).

342. Schwarz began the cross examination of Mr. Gostree. (R. at 39). During his direct examination, Mr. Gostree made defamatory statements about Schwarz and Gulf Coast. (R. at 22–29). These statements were untrue and Schwarz's attorney attempted to clarify these statements in order to discredit Mr. Gostree's testimony about other issues. (R. at 39–40).

343. Chairman Kaul immediately interrupted and stated that the cross examination would not continue if it was related to the defamatory statements that Mr. Gostree previously made. (R. at 40–42).

344. Schwarz attempted to continue with this cross examination; however, Mr. Kaul and Ms. Kiefer prevented Schwarz from doing so. (R. at 40–42).

345. Schwarz then inquired into Mr. Gostree's observations of 12305 3rd Street. (R. at 43–53). During this line of questioning, Ms. Kiefer asserted objections on the City's behalf. (R. at 43–53).

346. Schwarz questioned Mr. Gostree about certain documents he had within his possession. (R. at 45–48). Schwarz tried to enter the documents into evidence. (R. at 48). In response, Ms. Kiefer directed the Board to deny the request. (R. at 48). The Board followed Ms. Kiefer's advice and refused to allow Schwarz to enter the documents into evidence. (R. at 48).

347. Following Mr. Gostree's cross examination, Schwarz requested for the Board to either allow him to inquire into the defamatory statements that Ms. Gostree made or to strike his testimony. (R. at 52). The Board denied both requests. (R. at 53). In fact, one of the Board members stated:

> If he cannot handle it properly, then I ask him to either sit down and be quiet or to leave the room. My time is more valuable than setting here listening to the garbage that we've heard the last fifteen minutes.

(R. at 53).

348. Although the Board allowed Mr. Gostree to make these defamatory statements, it simply refused Schwarz with the opportunity to cross examine them. (R. at 54).

349. Following cross examination, Ms. Kiefer elicited additional testimony from Mr. Gostree. (R. at 58–60).

350. Thereafter, the City called Ms. Jamie Herman to testify. (R. at 64). She lives adjacent to 12305 3rd Street. (R. at 64). Following a brief statement from Ms. Herman, Ms. Kiefer, again acting as the prosecutor, elicited testimony on behalf of the City. (R. at 66–68).

351. Following the testimony of Mr. Gostree and Ms. Herman, many citizens for Treasure Island appeared to testify against Schwarz. (R. at 72–87). The majority of the statements made by these objectors were that: (i) recovering drug addicts and alcoholics were residing in a residential district; (ii) such individuals should not be allowed to live in a residential

district; and (iii) such individuals should live in another, more intensive zoning district such as commercial or industrial. (R. at 72–87).

352. Chairman Kaul stated that he understood why everyone was very upset and emotional. He thanked everyone for coming to testify. (R. at 84).

353. Following the testimony from the surrounding neighbors, Schwarz was permitted to make his presentation of the case.

354. Schwarz first made an objection to the hearing going forward because he could not adequately prepare for it. (R. at 96). This lack of preparation was directly related to the City's failure to timely provide him with the public records that were requested, as described above. Following this request, Ms. Kiefer argued on behalf of the City, called Schwarz's attorney unethical, and then recommended for the Board to deny the request. (R. at 97–102).

355. The Board denied Schwarz's request for a continuance. (R. at 102).

356. Next, Schwarz moved to disqualify certain Board members. (R. at 102). He moved to disqualify Board member, John Hehn, who had previously visited 12305 3rd Street and engaged in communications with one of the residents who lived there. (R. at 103–104). Schwarz also moved to disqualify other Board members because they had prejudged him and characterized him as a "violator." (R. at 104–105).

357. In response, Ms. Kiefer advised the Board as to the manner in which they should vote on the motion to disqualify. (R. at 105–106). The Board followed Ms. Kiefer's advice. Mr. Hehn disqualified himself; the other two Board members refused. (R. at 107–110).

358. Schwarz then made an opening statement (R. at 112–116). During this opening statement, the Board's chair, Mr. Kaul, interrupted on numerous occasions. (R. at 112–116). Thereafter, Schwarz began to question Ms. Kitts. (R. at 117).

359. Schwarz asked Ms. Kitts why the City contended that the use at 12305 3rd Street violated section 68-2, City of Treasure Island Code of Ordinances. (R. at 119–120).

360. Ms. Kitts specifically stated: "because you have six or seven unrelated people living in that home." (R. at 120).

361. Ms. Kitts also stated that Schwarz was operating 12305 3rd Street as a tourist residential dwelling because of the number of turnovers that occurred during a twelve month period. (R. at 120). According to Ms. Kitts, a residence is considered a tourist residential dwelling if there is a turnover of more than six people in one year. (R. at 120–121). Schwarz inquired whether Ms. Kitts would change her opinion if it were proven that 12305 3rd Street served as the residents' permanent home during the time of their lease. (R. at 120). Without equivocation, Ms. Kitts responded by stating "No." (R. at 120). When asked, why, Ms. Kitts stated that: "Because Mr. Schwarz testified, I believe, in his first hearing that he has over six different leases in that house. Okay? And six different leases make that house a tourist dwelling, which is not allowed in RM-15." (R. at 120–121).

362. Under the definition of a tourist residential dwelling, a rebuttable presumption arises that a dwelling is not a tourist residential dwelling if the occupant is residing there permanently during his residency regardless of whether the number of turnovers exceeds six times in a twelve month period. (R. at 121).

363. Schwarz's attorney attempted to elicit this conclusion from Ms. Kitts; however, she vehemently stated that 12305 3rd Street was being operated as a tourist residential dwelling. (R. at 121).

364. Schwarz elicited further testimony from Ms. Kitts. (R. at 122–124). During most of these inquiries, Ms. Kiefer interrupted, lodged objections, and obstructed Schwarz's attempts to preserve the record. (R. at 122–124).

365. Ms. Kiefer then inquired of Ms. Kitts. (R. at 124–125). The prescient question as it relates to the instant case is as follows:

> ***Q. So is it correct that you're not just presenting it to the board that says it's a tourist dwelling, which is inconsistent with the RM-15 allowed uses?***
>
> ***A. Correct. Pretty much I filed it [the notice of violation] because I believe that it's a sober living facility.***

(emphasis supplied) (R. at 125).

366. The City then called Schwarz to testify. (R. at 125). Ms. Kiefer elicited testimony of Schwarz in an effort to prove the City's case. (R. at 126–166).

367. Following this examination, Schwarz tried to introduce documents into evidence to preserve the record. (R. at 126–166). These were the public records that the City had produced to Schwarz earlier that morning. (R. at 182). Ms. Kiefer objected to this request and recommended for the Board to deny it. (R. at 182–184). The Board denied Schwarz's request. (R. at 186).

368. The Board closed the proceedings and engaged in discussion. (R. at 186–199). There, Ms. Kiefer recommended the manner in which the Board should conduct its proceedings, how it should tailor any order that it might enter, and the possible penalties that it should levy against Schwarz. (R. at 186–199).

369. The Board adjudicated Schwarz in violation of section 68-2 City of Treasure Island Code of Ordinances by a 6 to 0 margin. (R. at 195–196). The Board gave Schwarz only seven days to comply with its ruling. (R. at 195–196).

## LEGAL ARGUMENT

370. Under section 162.11, Florida Statutes (2003), the circuit court is vested with the power to review a decision by a local government code enforcement board. The review is limited to (i) whether procedural due process is accorded; (ii) whether the essential requirements of the law have been observed, and (iii) whether the administrative findings and judgment are supported by competent substantial evidence. City of Deland v. Benline Process Color Co., Inc., 493 So. 2d 26 (Fla. 5th DCA 1986) (citing City of Deerfield Beach v. Vaillant, 419 So.2d 624 (Fla.1982)).

### Procedural Due Process Violations

**(a) Attorney to Board in Dual Roles.**

371. Schwarz's due process rights were violated during the August 10, 2005 hearing when the City's attorney, Ms. Keifer, simultaneously acted as the prosecutor on behalf of the city and the advisor to the Board. Under Florida law, a local government's attorney cannot simultaneously act, during a quasi-judicial proceeding, as an advocate on behalf of the local government and serve as an advisor to the adjudicatory board. Brown v. Walton County, 667 So. 2d 376, 377 (Fla. 1st DCA 1995). Under Florida Supreme Court precedent, a local government attorney acts as a prosecutor when he or she: (i) cross-examines witnesses; (ii) makes objections; and (iii) makes argument in opposition to the party being charged with a violation. Cherry Communications, Inc. v. Deason, 652 So. 2d 803, 805 (Fla. 1995), and acts as an advisor when he or she: (i) comments on the evidence; (ii) makes recommendations based on the record; and (iii) directs the manner in which the proceedings should occur. Id.

372. At the outset of the hearing, Ms Keifer stated that she would be focused on the witnesses on behalf of the City. (R. at 22). She: (i) examined and cross examined the witnesses

(R. at 22–71, 124–125, 126–166); (ii) introduced evidence into the record (R. at 20, 21, 22, 55, 70, 71); (iii) lodged objections on behalf of the City (R. at 47, 122, 123, 136); and (iv) asserted argument in response to the ones that Schwarz's attorney made (R. at 1–251). Simultaneously therewith, Ms. Kiefer: (i) directed the Board as to the manner in which it should rule on objections (R. at 47–49, 122, 123, 130, 182); (ii) commented on the weight of the evidence (R. at 187, 190, 193); and (iii) made recommendations to the Board concerning various matters (R. at 182, 187, 190, 193, 196). This dual sided role lasted for the entire hearing, was objected to numerous times, and was rejected outright by the Board. Such a willful disregard for Schwarz's rights constituted a procedural due process violation.

**(b) Conditions of Fairness.**

373. The Board violated Schwarz's due process rights because its members were clearly biased in their rulings and comments at the August 10, 2005 hearing. Under the Florida and United States Constitutions, a quasi-judicial board and its members must be impartial and fair when sitting at a hearing to determine whether a party should be charged with a violation of a rule, regulation, or ordinance. Seminole Entertainment v. City of Casselberry, 811 So. 2d 693, 696–697 (Fla. 5th DCA 2001); Mack v. Fla. State Bd. of Dentistry, 430 F. 2d 862, 863 (5th Cir. 1970). A board acts unfairly if it: (i) rejects objections made by the accused, while sustaining objections made by the local government; (ii) allows the local government attorney to engage in ad hominem attacks against the alleged violator and his or her attorney; (iii) refuses to allow the alleged violator to adequately present his or her case before the tribunal; and (iv) fails to keep the hearing in order. Id.

374. In the instant case, the Board's members: (i) told Schwarz's attorney to sit down on numerous instances; (ii) allow Ms. Kiefer to interject on numerous occasions to lodge

objections and to interfere with the orderly flow of the hearing; (iii) refused the objections that Schwarz lodged; and (iv) sustained Ms. Keifer's objections. At one point, one of the Board's members stated that Schwarz's examination of certain witnesses was nothing more than garbage. This conduct transformed the Board from an impartial tribunal into a biased, unfair arbiter where Schwarz was unable to have a fair and just determination of the merits of the case.

**(c) Opportunity to present case, confront witnesses, enter and object to documents.**

375. The Board violated Schwarz's rights to due process by refusing him with the right to cross-examine Mr. Gostree and to discredit him based on the defamatory statements made during the hearing. Under Florida law, it is a violation of due process to preclude an individual from cross examining a witness, examine the documents that the witness relied on, and to allow the individual to introduce such documents into the record. Kupke v. Orange County, 838 So. 2d 598, 599 (Fla. 5 th DCA 2003); Morgan v. U.S., 58 S. Ct. 773 (1938); Van Morfit v. Univ. of S. Fla., 794 So. 2d 655 (Fla. 2d DCA 2001).

376. In the instant case, the Board: (i) refused Schwarz the right to cross-examine Mr. Gostree; (ii) prevented Schwarz from entering documents into the record upon which Mr. Gostree relied; and (iii) refused Schwarz the right to enter documents into the record for this appeal. These actions, among others, violated Schwarz's rights to procedural due process, and the August 10, 2005 order must be quashed.

**(d) Improper Questioning By Decision maker.**

377. The Board violated Schwarz's procedural due process rights by engaging in obstructionist tactics during his presentation, asking questions of witnesses, and trying to build a record against Schwarz. Under Florida law, it is well-accepted that a quasi-judicial board cannot embark upon a pattern of conduct that: (i) prevents the alleged violator from fully examining a

witness; (ii) requires the alleged violator to abstain from asking questions of a witness; and (iii) imposing objections. Dep't of Hwy Safety v. Pitts, 815 So. 2d 738 (Fla. 1st DCA 2002).

378. The record is replete with references that show the Board: (i) prevented Schwarz from making a complete examination of the witnesses; (ii) imposed objections during the questioning of witnesses, including Mr. Gostree and Ms. Kitts; and (iii) required Schwarz to "move on" with examination of witnesses even though he had not finished with his examination. These actions are tantamount to a due process violation, and the Board's conduct must be sanctioned.

**Failure to Support Decision Based on Competent Substantial Evidence**

379. The Board failed to follow the essential requirements of law when it found Schwarz in violation because he was purportedly operating a tourist residential dwelling.

380. Under the LDC, a tourist residential dwelling is defined as:

> a single-family or two-family dwelling which is used as a tourist dwelling. A single-family or two-family dwelling shall be considered a tourist dwelling according to the following criteria:
>
> (1) If the single-family, or two-family dwelling is subject to or operates under an arrangement plan or design whereby the use of the dwelling or unit in the dwelling has been segmented over time so that owners, lessees or holders (regardless of the form of ownership or the form in which the right to use is expressed) of such unit has a recurring exclusive right to use either that dwelling or unit or another unit in the same dwelling according to a predetermined fixed schedule and only if the schedule would permit in any one year a change or turnover of occupancy six or more times, it shall be considered a tourist dwelling.
>
> (2) If the single-family or two-family dwelling operates under or is subject to an arrangement plan or design whereby sleeping accommodations and sanitary facilities in the dwelling or in a unit in the dwelling are offered to the public or reserved to private parties and the use thereof by members of the public is primarily on a daily, weekly, monthly or seasonal basis, it shall be considered a tourist dwelling. Provided that when the dwelling or unit in the dwelling is the sole residence of the guest, a rebuttable presumption arises that the dwelling or unit is not being used as a tourist home. Provided further that if the occupancy of such dwelling or unit does not change more frequently than six times or more in

any continuous 12-month period, then a rebuttable presumption shall arise that the dwelling or unit is not being used as a tourist dwelling.

(3) In addition to the above, if a single-family dwelling located in the RU-75 land use district is operated or used in such a way that it has a turnover in occupancy of more that two times in any one year, it shall create a rebuttable presumption that such single-family dwelling is a tourist dwelling.

By plain operation of the LDC, a rebuttable presumption arises that a residence is not being used as a tourist residential dwelling if the residence serves as the occupant's sole residence.

381. At the hearing, Schwarz testified 12305 3rd Street was the sole residence of the clients. (R. at 127). Thus, a rebuttable presumption arose that 12305 3rd Street was not being used as a tourist residential dwelling.

382. The City never came forward with any evidence to rebut this presumption. The Board departed from the essential requirements of law when it found Schwarz in violation of section 68-221, City of Treasure Island Code of Ordinances.

WHEREFORE, Schwarz respectfully requests this Court: (i) find that the petition has stated a prima facie basis for relief; (ii) issue a summons in certiorari directed towards the City demanding that it demonstrate why this Court should not issue the writ of certiorari; (iii) find that the Board violated Schwarz's procedural due process rights; (iv) has departed from the essential requirements of law; (iv) quash the August 10, 2005 order; and (v) direct the Board to conduct another hearing.

**DEMAND FOR JURY TRIAL**

383. Plaintiffs hereby demand trial by jury on all issues so triable.

Respectfully Submitted,

By: ______________________

David Smolker
Florida Bar No.: 349259
Ethan J. Loeb
Florida Bar No.: 668338
BRICKLEMYER SMOLKER & BOLVES, P.A.
500 East Kennedy Boulevard
Suite 200
Tampa, Florida 33602
(813) 223-3888/(813) 228-6422 (fax)
Attorneys for Plaintiffs