# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**MATTHEW SCHWARZ, et al.,**

      **Plaintiffs,**

**v.**                              **Case No.  8:05-cv-1696-T-30MSS**

**CITY OF TREASURE ISLAND, et al.,**

      **Defendants.**

_____/

## ORDER

THIS CAUSE comes before the Court upon Defendants' Dispositive Motion for Summary Judgment and Incorporated Memorandum of the Law (Dkt. 177), Plaintiffs' Memorandum in opposition to the same (Dkt. 209), Plaintiffs' Motion for Summary Judgment and Incorporated Memorandum of the Law (Dkt. 178), and Defendants' Response in opposition to the same (Dkt. 208).

Plaintiffs allege claims against the City of Treasure Island (the **"City"** or **"Treasure Island"**) and the City of Treasure Island Code Enforcement Board (the **"CEB"**)[1] for violations of the Fair Housing Act, as amended, 42 U.S.C. § 3601, *et seq.* (the **"FHA"**), the Americans with Disabilities Act, 42 U.S.C. § 3601 *et seq.* (the **"ADA"**), the Rehabilitation Act of 1973 (the **"Rehabilitation Act"**), the equal protection and procedural due process provisions of the United States and Florida Constitutions, and Section 162.09 of the Florida

---

[1] The City and the CEB are collectively referred to herein as **"Defendants."**

Statutes. The Court, having considered the motions, response, memoranda, and being otherwise advised in the premises, determines that Defendants' Motion should be granted and Plaintiffs' Motion should be denied.

## Background

### I.     The Parties

Plaintiff Matthew Schwarz (**"Schwarz"**) is the President and CEO of Gulf Coast Recovery, Inc. (**"Gulf Coast"**), a Florida corporation headquartered in the City. Schwarz founded Gulf Coast to provide out-patient rehabilitative services to individuals requiring professional assistance to overcome addictions to alcohol and/or controlled substances. On or about June 23, 2004, the Florida Department of Children and Family Services (**"DCF"**) licensed Gulf Coast to provide out-patient treatment to recovering addicts at its facility located at 145 108th Avenue, Treasure Island (the **"Treatment Facility"**). Gulf Coast does not have a license from DCF to provide in-patient or residential treatment to its clients.

In addition to providing out-patient treatment, Schwarz and Gulf Coast own or lease a number of single family homes or condominiums throughout the City (collectively, the **"Properties"**) to clients enrolled in the Gulf Coast treatment program. The clients' decision to seek lodging at one of the Properties is optional.[2] Clients who wish to reside in one of the Properties execute a short term lease with Schwarz (or with Schwarz in his capacity as President of Gulf Coast). Gulf Coast clients generally pay between $1,000.00 and $2,000.00

---

[2] The Court notes that DCF has cited Gulf Coast in the past for failing to inform its clients that residing in one of the Properties is not required to participate in its in-patient treatment program.

per month to lease a single bedroom in one of the Properties. The "John and Jane Doe" plaintiffs in this action are current or former tenants of the Properties and participants in the Gulf Coast recovery program (the John and Jane Does, Schwarz, and Gulf Coast are collectively referred to herein as the **"Plaintiffs"**).

Schwarz and Gulf Coast claim that occupancy of the Properties is limited to Gulf Coast clients. While residing at the Properties, Gulf Coast clients agree to: (i) not consume drugs, alcohol, or illegal substances; (ii) not use or possess pornographic materials; (iii) not handle or possess weapons; (iv) clean up and maintain the Properties, and (v) not allow overnight guests without the express permission of Gulf Coast.[3] The Properties are fully furnished by Schwarz. While residents prepare their own meals, Schwarz provides food and other staples. According to Plaintiffs, such residential living accommodations are an important element of the Gulf Coast treatment program, as they reduce recidivism rates and provide a therapeutic environment that closely mirrors everyday life.

The City of Treasure Island is a compact coastal community of approximately 7,500 residents. According to Defendants, the City's population increases by almost one-hundred percent (100%) during tourist season due to increased occupancy of hotels, motels, apartments, and other short-term rentals. The City has adopted a Comprehensive Plan pursuant to Section 163.3194, Florida Statutes, which is implemented via the City's Land Development Regulations (the **"LDR"**), codified at Part II of the City's Code of Ordinances

---

[3] According to Plaintiffs, these rules are imposed in a self-governing fashion as Gulf Coast employees and/or counselors do not reside at any of the Properties. The Court notes that the referenced restrictions are incorporated into the leases for the Properties as "Property Rules."

(the **"Code"**).  According to Defendants, the City "formulated a series of zoning districts to control the sporadic growth and traffic associated with transient uses such as hotels and transient rentals and their impact on residential areas within the City."  The LDR establishes five use districts that accommodate residential uses: (i) Residential Medium ("RM-15"), Residential Urban ("RU-75"), Resort Facilities Medium ("RFM-30"), Resort Facilities High ("RFH-50"), and Commercial General ("CG").  Transient uses are expressly permitted in the RFM-30, RFH-50, and Commercial General districts, which encompass approximately twenty-percent (20%) of the City's land area.[4]

## II.    The City's Code Enforcement Activity

Beginning in November of 2004, the City began receiving complaints concerning a home owned by Schwarz, located at 12305 3rd Street East (the **"12305 Property"**).[5] Neighbors complained of excessive traffic, noise from the back yard, numerous people moving in and out, and that the property was being used as a "rehab facility" or half-way house for recovering addicts.  Upon investigation, the City discovered that the 12305 Property was being used to house Gulf Coast clients, and that Gulf Coast advertised the residence as a "sober living facility" on its internet website.  The City began corresponding with Schwarz regarding the use of the 12305 Property.

---

[4] The City asserts that each of these districts include high-end single family homes located within three miles of the Treatment Facility.

[5] The 12305 Property is located in an RM-15 district.  It is the only single family residence in the immediate area and is surrounded by multi-family units, including condominiums and town homes.

In February of 2005, the City discovered Schwarz was also housing Gulf Coast clients at a home located at 250 115th Avenue.  By letter dated February 14, 2005, the City advised Schwarz that these properties were located in residential zoning districts, and that:

> These properties may be used as rentals however uses such as group homes and congregate living may require additional city approvals and state licensing. Also, the frequency of tenant turnover and the number of unrelated families need to be defined to determine if these properties constitute a transient use or [are] overcrowded.  We are aware that these properties have been advertised as halfway houses . . . The City requires that a license be obtained for any type of rental use as mentioned above.

(Dkt. 7, ¶ 35).  Schwarz was asked to detail the uses of the properties so the City could determine whether a violation existed.  Schwarz failed to provide the City with the requested information.

On April 25, 2005, the city cited Schwarz in connection with the 12305 Property for operating a residential, group, or transient rehabilitation facility without a license and for operating more than one business at the same location.  The CEB held a hearing on the violation on June 23, 2005.  During the hearing, Schwarz testified that the property was his personal residence, and that the others residing there were his roommates.  Surrounding neighbors appearing at the hearing complained that the property was being leased to recovering addicts.  The hearing was continued until July 6, 2005, at which time the CEB dismissed the violation on the basis of Schwarz's testimony that the 12305 Property was not being operated as a group home.

On or about July 8, 2005, Schwarz was cited for his use of the 12305 Property for violating City's Code Section 68-221, which prohibits the use of a property for any use not

expressly permitted in a zoning district.  The City's Code permits the following uses within

the RM-15 district:

    a.      Dwelling, residential.
    b.      Public park and public recreation areas.
    c.      Home occupations in dwelling units as defined in Section 68-493.
    d.      Group homes licensed by the state department of health and rehabilitation excluding [Adult Congregate Living Facilities] ACLFs.
    e.      Telecommunication antennas attached to existing structures which comply with section 68-465 are prohibited.
    f.      Public education facilities.
    g.      Community residential homes.

The City claimed Schwarz was operating the 12305 Property as a "tourist dwelling," which

is defined in Section 68-2 the City's Code as follows (in pertinent part):

> Dwelling, tourist means a single-family or two-family dwelling which is used as a tourist dwelling. A single-family or two-family dwelling shall be considered a tourist dwelling according to the following criteria:
>
> . . . (2) If the single-family or two-family dwelling operates under or is subject to an arrangement plan or design whereby sleeping accommodations and sanitary facilities in the dwelling or in a unit in the dwelling are offered to the public or reserved to private parties and the use thereof by members of the public is primarily on a daily, weekly, monthly or seasonal basis, it shall be considered a tourist dwelling. Provided that when the dwelling or unit in the dwelling is the sole residence of the guest, a rebuttable presumption arises that the dwelling or unit is not being used as a tourist home. Provided further that if the occupancy of such dwelling or unit does not change more frequently than six times or more in any continuous 12-month period, then a rebuttable presumption shall arise that the dwelling or unit is not being used as a tourist dwelling.[6]
>
> (3) In addition to the above, if a single-family dwelling located in the RU-75 land use district is operated or used in such a way that it has a turnover in

---

[6] Though inartfully worded, it is apparent that the City intends a rebuttable presumption to arise that the dwelling is not being used as a tourist dwelling if occupancy changes more than six times in any contiguous 12-month period.

occupancy of more that two times in any one year, it shall create a rebuttable presumption that such single-family dwelling is a tourist dwelling.

On or about August 10, 2005, the CEB again convened a hearing during which Schwarz disclosed he was leasing the 12305 Property to Gulf Coast clients and produced approximately sixty-eight (68) redacted, short term leases. Schwarz testified that he leased the 12305 Property to four to six tenants at a time, and that tenants typically shared a bedroom. Based on the leases produced by Schwarz, the CEB determined that there was an average client turnover of at least five persons per month during the thirteen month period at issue. At the conclusion of the hearing, the CEB found that Schwarz's rental practices at the 12305 Property were in violation of Section 68-221 of the City's Code. Schwarz was given seven (7) days to comply with the ordinance, failing which he would be fined $250.00 per day.[7]

On or about August 8, 2005, the City requested Schwarz sign a document to establish compliance with the CEB's order. The document required Schwarz to represent the following:

1. I or my family are the only resident(s) at 12305 3rd Street East in Treasure Island, Florida.

2. I understand that no other tenants other than Matthew Schwarz and/or his family are allowed to reside at 12305 3rd Street East for a period of one year unless the property is sold prior to that time.

---

[7] Plaintiffs' have objected to the actions of the City's attorney at the August 10 hearing. Plaintiff's allege the City's attorney took on an improper dual role by acting as both advisor to the board and prosecutor, as evidenced by her: (i) examining and cross examining witnesses, (ii) introducing evidence into the record, (iii) lodging objections on behalf of the City, and (iv) asserting arguments in response to those made by Schwarz's attorney.

Schwarz refused to sign the document.  On or about August 25, 2005, the CEB determined that Schwarz had failed to comply with its order and assessed a $250.00 per day fine against Schwarz, beginning August 26, 2005.

The City has cited a number of other Properties owned or leased by Schwarz to provide lodging for Gulf Coast clients.  On or about July 20, 2005, the owners of property located at 12275 3rd Street East were cited for violating Section 68-221 by subleasing units to a "sober living facility or transit use" in an RM-15 district.  On or about August 9, 2005, the City cited the owners of 10101 and 10214 Tarpon Drive for violating Section 68-221.  The citation issued as to the 10214 Tarpon Drive property noted the property was being operated as a transient facility, which "[m]eans a building or buildings containing individual guest rooms, units or efficiencies for which daily or weekly lodging is provided to be more or less transient residences of individuals or families."  On August 31, 2005, Schwarz was cited for violating Section 28-221 in connection with properties located at 250 115th Avenue and 10214 Tarpon Drive.  Plaintiff filed the instant lawsuit on September 9, 2005.

During a CEB hearing on September 22, 2005, Schwarz refused to testify or produce any documents.  As a result, the City filed a petition to enforce a subpoena and for an order to show cause in the Circuit Court in and for Pinellas County, City of Treasure Island v. Matthew B. Schwarz, case no. 05-6608-13.  The September 22 hearing was continued until November 10, 2005.  During the November 10 hearing, the citation for the 10214 Tarpon Drive property was dismissed on procedural grounds and rescheduled, along with the 250 115th Avenue violation, for November 22, 2005.  The November 22 hearing was cancelled.

The Court is unaware of any additional enforcement actions against Gulf Coast or Schwarz. Thus, the 12305 Property is the only Property for which the City has imposed a fine.

Since filing this lawsuit, Plaintiff has attempted to request a "reasonable accommodation" from the City for the use of the Properties. Plaintiffs' requests have included the following: (i) that the City "verify that a residential treatment facility, as defined by the Florida Statutes and Florida Administrative Code, qualifies as a group home under the [LDR], or, if not, to amend the [LDR] to authorize such a use within the RU-15 and RM-75 zoning districts," and (ii) that the city allow Gulf Coast clients to remain in the Properties if they sign affidavits asserting that the Properties are their sole place of abode. The City has denied these requests. Further, DCF has denied Plaintiffs' applications for a license to operate residential treatment facilities within the City because Plaintiffs cannot obtain zoning verification from the City for such a use. The City has continually denied Plaintiffs' request to verify that such a use is permitted in the RM-15 and RU-75 zoning districts, or amend the LDR to allow such a use within these districts. Residential treatment facilities are not specifically permitted in any of the City's zoning districts. However, the City has indicated that the RM-30, RFH-50, and CG zoning districts have the potential to accommodate such a use, although Gulf Coast would have to obtain a special exception to do so.[8]

---

[8] The treatment/counseling element of a Residential Treatment Facility is categorized by the City as a professional office use. Such a use is permitted by special exception within the RFM-30 and RFH-50 zoning districts and is a permitted use in the CG district. Residential uses up to 15 units per acre are permitted uses in both the RFM-30 and RFH-50 zoning districts, and permitted by special exception in the GG district.

Following the September 22, 2005 hearing, the City filed a lawsuit in state court to enjoin Plaintiff from "operating illegal tourist dwellings" and continuing "illegal rental activities." That case was removed to this Court and consolidated with the instant action on February 2, 2006. On September 27, 2007, Plaintiffs moved to remand the City's action for injunctive relief to state court. Immediately prior to the entry of this Order, the Court granted Plaintiffs' motion. Thus, the City's action for injunctive relief is no longer before this Court.

## Discussion.

### I. Summary Judgment Standard.

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. Id. Throughout this analysis, the judge must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in her favor. Id. at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the

nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. <u>Celotex</u>, 477 U.S. at 324. The evidence must be significantly probative to support the claims. <u>Anderson</u>, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. <u>Fernandez v. Bankers Nat'l Life Ins. Co.</u>, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." <u>Warrior Tombigbee Transp. Co. v. M/V Nan Fung</u>, 695 F.2d 1294, 1296 (11th Cir.1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson</u>, 477 U.S. at 248; <u>Hoffman v. Allied Corp.</u>, 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. <u>Verbraeken v. Westinghouse Elec. Corp.</u>, 881 F.2d 1041, 1045 (11th Cir. 1989).

## II.     Legal Analysis.

### A.     Plaintiffs' FHA, ADA, Rehabilitation Act, and equal protection claims.

The central issue in this case is whether Schwarz and Gulf Coast should be permitted to lease the Properties to recovering drug and alcohol addicts in violation of the City's zoning restrictions on tenant turnover. The analysis of Plaintiffs' claims is identical under the FHA, the ADA, the Rehabilitation Act, and the equal protection clause of the Fourteenth Amendment, enforceable through 42 U.S.C. § 1983. <u>See</u> <u>Dr. Gertrude A Barber Center, Inc.</u>

v. Peters Township, 273 F. Supp. 2d 643, 652 (E.D. Pa. 2003).  Consequently, the Court's discussion will focus on the law that has developed under the FHA.  Id.

The FHA prohibits discrimination in housing against persons with handicaps. The FHA defines handicap (with respect to an individual) as a "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment." 42 U.S.C. § 3602(h).  Plaintiffs assert that Gulf Coast clients are handicapped within the purview of the FHA, and that Defendants have discriminated against them by: (i) failing to provide Plaintiffs with a reasonable accommodation, (ii) imposing rules, regulations, and ordinances that have created a disparate impact on Plaintiffs, and (iii) engaging in disparate treatment of Plaintiffs by invidiously discriminating against them.

As stated by the Second Circuit, "[a]lcoholism, like drug addiction, is an 'impairment' under the definitions of a disability set forth in the FHA, the ADA, and the Rehabilitation Act." Reg'l Econ. Cmy. Action Program, Inc. v. City of Middletown, 249 F.3d 35, 46 (2d. Cir. 2002) ("RECAP").  Defendants have not contested Gulf Coast's clients' disability under the FHA.  Rather, Defendants argue that the City has not discriminated against Plaintiffs, and that the Properties are not "dwellings" under the FHA.

This Court has already held that the Properties are not "dwellings" under the FHA by adopting the Report and Recommendation submitted by Magistrate Judge Mary S. Scriven (Dkt. 96), which denied Plaintiffs' request for a preliminary injunction.  Judge Scriven's discussion and conclusion that the Properties are not "dwellings" under the FHA is

incorporated herein by this reference.  The Court notes that Defendants appealed the denial of their request for a preliminary injunction to the Eleventh Circuit.  On September 28, 2007, the Eleventh Circuit affirmed this Court's denial of the preliminary injunction.  Schwarz v. City of Treasure Island, 2007 WL 2815585 *1 (11th Cir. 2007).  The Eleventh Circuit stated "[w]e do not decide the ultimate issue of whether Appellants will prevail.  We can conduct a more thorough review following the district court's final decision regarding injunctive relief.  We decide only that the district court did not abuse its discretion in denying the request for a preliminary injunction."  Id.  Notwithstanding additional argument by the parties, the Court's prior conclusion that the properties are not "dwellings" under the FHA has not changed.  However, even if the Properties are "dwellings" under the FHA, Plaintiff has otherwise failed to establish that the city discriminated against Gulf Coast clients as a result of their handicapped status.  Therefore, summary judgment is appropriate in favor of Defendants.

Congress intended the FHA to "prohibit the use of zoning regulations to limit the ability of [the handicapped] to live in the residence of their choice in the community." Jeffrey O. v. City of Boca Raton, 2007 WL 628131 *7 (S.D. Fla. 2007).  While Congress intended for the FHA to apply to zoning ordinances, "the FHA does not pre-empt or abolish a municipality's power to regulate land use and pass zoning laws."  Id. (citing Hemisphere Bld. Co., Inc. V. Vill. Of Richton Park, 171 F.3d 437, 440 (7th Cir. 1999).  Land use restrictions aim to prevent problems caused by the "pig in the parlor instead of the barnyard." City of Edmonds v. Oxford House, 514 U.S. 725, 732 (1995)(quoting Vill. of Euclid v.

Ambler Realty Co., 272 U.S. 365, 388 (1926)).  Reserving land for single family residences preserves the character of neighborhoods, securing "zones where family values, youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people." Id. at 733.  In balancing these principles, the Court analyzes Plaintiffs' claims as follows:

### 1.    Disparate Treatment.

In order to prevail on a disparate treatment claim, a plaintiff "must demonstrate that some discriminatory purpose was a "motivating factor" behind the challenged action. Community Services, Inc. V. Wind Gap Mun. Authority, 421 F.3d 170, 177 (3d. Cir. 2005). In RECAP, the Third Circuit applied the burden-shifting analysis set forth in McDonnell Douglas Corp v. Green, 411 U.S. 792 (1973) to analyze plaintiffs' FHA claims.  RECAP, 294 F.3d at 48-9.  Under this approach, a plaintiff "must first establish a prima facie case of discrimination" by presenting evidence that "animus against the protected group was a significant factor in the position taken by the municipal decision-makers themselves or by those to whom the decision-makers where knowingly responsive." Id. at 49; but see Dr.  Dr. Gertrude A. Barber Center, Inc. 273 F. Supp. 2d at 652 (holding a plaintiff need not prove malice or discriminatory animus, but instead must demonstrate "that a given legislative provision discriminates against the handicapped on its face, i.e. applies different rules to the disabled than are applied to others").  If a plaintiff establishes a prima facie case, the burden shifts to the defendants to prove a "legitimate, nondiscriminatory reason for the decision." Id.  If this burden is met, the plaintiffs must prove "that the defendants intentionally discriminated against them on a prohibited ground." Id.

Plaintiffs allege that the City unlawfully discriminated against them because of their status as recovering addicts or their relationship to drug and alcohol rehabilitation services. Plaintiff argues that the following actions evidence the City's discriminatory intent:

a.      The use of the terms "group home", "sober living facilities," and "half-way houses" by City employees and officials to describe the Properties.

b.      The following comment made by City Commissioner Edward Gayton during a public hearing (in reference to the August 10, 2005 hearing):

> When we start to talk about Gulf Coast Recovery . . . I think that we have a city wide problem . . . We now have nine drug and alcohol rehab centers on the Island.  It is an emergency situation.  I think this should be dealt with in a swift and severe manner.  We could get a court order possibly against Gulf Coast Recovery to stop the company from operating in the City until they come into compliance.

c.      The City's following of Gulf Coast clients throughout the City, prosecuting code enforcement matters before the CEB, and singling out Plaintiff's for different treatment.

f.      The City's cited reasons for its code enforcement actions are nothing more than a pretext for unfounded fears that citizens have lodged in the public forum.

e.      The City has interpreted the word "family" in the LDR in such a way to preclude Gulf Coast clients from living together as a collective family.  In support of this argument, Plaintiffs reference a notice of violation posted at the

10101 Tarpon Drive property, which stated: DO NOT REMOVE.

VIOLATION OF SECTION 68-22.  CORRECT: ONE FAMILY ONLY.

A review of the record indicates that the City had reasonable grounds to believe Schwarz was using the Properties in violation of the City's Code.  Schwarz used the term "sober living facility" to advertise the properties on his website.  Thus, the use of this term by the City in correspondence to Schwarz or during public hearings does not indicate a discriminatory intent.  Schwarz repeatedly evaded the City's inquiries regarding the use of the Properties and made every effort to frustrate and delay the enforcement proceedings.  The City's use of these terms was clearly an attempt to clarify the use of the property, not to discriminate against handicapped individuals.[9]

Plaintiffs argue that a "decision made in the context of strong, discriminatory opposition becomes tainted with discriminatory intent even if the decision makers personally have no strong views on the matter."  Innovative Health Systems, Inc. V. City of White Plains, 117 F.3d 37, 49 (2d Cir. 1997); overruled on other grounds by Zervos v. Verizon New York, 252 F.3d 163, 171 n. 7 (2d Cir. 2001); see also Support Ministries for Persons with AIDS, Inc. v. Vill. of Waterford, N.Y., 808 F. Supp. 120, 134-135 (S.D. N.Y. 1992) (stating "if an official act is performed simply in order to appease the discriminatory viewpoints of private parties, that act itself becomes tainted with discriminatory intent even if the

---

[9] The City's code enforcement officer contacted the owners of the Properties leased to Schwarz, photographed vehicles entering and leaving the Properties, and interviewed persons occupying the properties. These actions exhibit reasonable efforts to investigate the Properties rather then discriminatory intent on the part of the City.

decisionmaker personally has no strong views on the matter."). The record reflects that surrounding neighbors of the Properties wrote letters to the City and appeared at public hearings to object to the Properties as refuges for recovering addicts. Neighbors feared that Gulf Coast clients posed a threat to children in the neighborhood. One neighbor acknowledged that recovering addicts have a place in society, but asserted they have no place in the City's residential neighborhoods.

A review of the record reveals that, although neighbors of the City may have been motivated by discriminatory intent, the action taken by the CEB did not discriminate against handicapped individuals. The Properties were cited as improper transient uses in violation of the City's restrictions on tenant turnover in residential zoning districts. While the 12275 3d Street property was cited as a "sober living facility" or a "transit use," such designation is not evidence of discriminatory animus. Requiring Plaintiffs to abide by the same turnover restrictions as other citizens of the City is not evidence of discrimination. Comments made by Gayton and CEB members indicate frustration with Gulf Coast and Schwarz and a desire for them to comply with the City's Code. Such comments do not demonstrate discriminatory intent on the part of the City.

Schwarz argues that the City's definition and interpretation of the term "family" discriminates against Gulf Coast clients as it precludes them from living together as a collective family. At the time Plaintiff initiated this action, Section 68-2 of the LDR defined

family[10] as "one or more persons occupying a dwelling, not more than three of whom are unrelated to each other by birth, adoption, or marriage."  This provision by its own terms does not refer to recovering individuals or the handicapped.  It restricts four unrelated non-handicapped people from living together in one dwelling, just as it restricts four recovering individuals.  This provision is not evidence of discriminatory intent.  As discussed below, the City's definition of "family" is more appropriately examined for its disparate impact on Plaintiffs.

As noted by the district court in Oxford House, Inc. v. City of Virginia Beach, 825 F. Supp. 1251, 1262 (E.D. Va. 1993), "[t]he Fair Housing Act protects handicapped individuals from discrimination.  It does not, and plaintiffs point to no provision of the statute suggesting otherwise, insulate such individuals from legitimate inquiries designed to enable local authorities to make informed decisions on zoning issues."  The City's conduct in investigating the Properties, conducting CEB hearings, and citing and fining Schwarz is not evidence of discriminatory animus or intent.  Rather, the City's actions were legitimate inquires designed to enable the City to make informed decisions on zoning issues.

---

[10]  The Court notes that the City has since revised its definition of "family" as follows:

Family means one or more persons permanently occupying a dwelling unit and living together as a single, nonprofit household unit (excluding section 68-493 pertaining to home occupations). Family does not include any society, club, fraternity, sorority, association, or like organization. This definition does not include any group of individuals whose association is temporary or seasonal or similar to a tourist dwelling, resort, boardinghouse, motel or hotel. This definition shall be construed to include those individuals protected as a family unit by the Fair Housing Act or other applicable laws that do not result in a fundamental alteration of the city's local land use (zoning) scheme.

Accordingly, Plaintiff has failed to establish a prima facie case of disparate treatment by the City.

### 2.      Disparate Impact.

Plaintiffs argue that the City's interpretation of the tourist dwelling definition has created a disparate impact on Plaintiffs because Gulf Coast clients cannot qualify as a "family" under the City's Code.  Under the FHA, disparate impact claims are reviewed under the framework established for disparate treatment cases brought under Title VII.  Dr. Gertrude A. Barber Center, Inc., 273 F. Supp. 2d at 655, citing Lapid-Laurel, L.L.C. v. Zoning Board Adjustment of the Township of Scotch Plains, 284 F.3d 442, 466 (3d Cir. 2002).  "Under this rubric, a plaintiff must first prove that defendants' policies or practices have a greater adverse impact on persons with disabilities than on non-protected persons. If the plaintiff demonstrates a prima facie case, then the burden shifts to the defendant to show that it had a legitimate, non-discriminatory reason for the action and that no less discriminatory alternatives were available."  Id.  To establish a violation of the FHA, a plaintiff must show "(1) the occurrence of certain outwardly neutral practices, which have (2) significantly adverse disproportionate impact on persons with disabilities."  Id.

Plaintiffs concede that the RM-15 and RU-75 zoning districts are facially neutral ordinances.  Structures within these zones must be "dwelling units," which are defined in Section 68-2 of the City's Code as single units "consisting of not less than 500 square feet of living area providing complete, independent living facilities for one family, including permanent provisions for living, sleeping, eating, cooking and sanitation, but not including

recreational vehicles, tents, hotels, motels or boardinghouses." As discussed herein, the City's definition of family allows a maximum of three unrelated people to live together. Because Gulf Coast clients are unrelated, they are precluded from living together as a collective unit of more than three people. Plaintiffs argue that this creates a disparate impact because an unlimited number of people related by birth or marriage can occupy a dwelling unit, while Gulf Coast's clients are prohibited from exceeding the three person occupancy restriction based upon their familial status.

Plaintiffs further assert that the City's application of the tourist dwelling definition creates a disparate impact. Plaintiffs argue that by restricting occupancy turnover to six (6) times a year, no more than six (6) disabled individuals can occupy the Properties on an annual basis. Theoretically, Plaintiff argues that 48 non disabled individuals could occupy the 12305 Property on an annual basis.[11]

The Court notes that courts in other districts have held that occupancy restrictions that establish an occupancy cap on unrelated individuals violate the FHA when the applicable code has not clearly established a procedure to allow a group of handicapped individuals to request a reasonable accommodation. Jeffrey O., 2007 WL 628131 at *14; Dr. Gertrude A. Barber Center, Inc., 273 F. Supp. 2d at 643. The courts in both Jeffrey O. and Gertrude A. Barber Center, Inc. held that ordinances restricting occupancy to no more than three unrelated individuals violated the FHA. Id. However, the court in Jeffrey O. noted "[w]hile

---

[11] This argument assumes six families of eight could occupy the 12305 Property in a given year, with two family members occupying each the home's for bedrooms.

I find no legal problem with the cap of three unrelated individuals per se, the limitation without any exception for handicapped individuals or an established reasonable accommodation procedure violates the FHA." Id.

Notwithstanding the foregoing, the Court rejects Plaintiffs' arguments for several reasons. First, the City has not enforced its code based on the definition of "family." While a notice placed on the 10101 Tarpon Drive property stated "DO NOT REMOVE. VIOLATION OF SECTION 68-22. CORRECT: ONE FAMILY ONLY," the City has not cited any of the Properties for providing occupancy for three or more unrelated persons. Second, the City's tourist dwelling definition imposes the same restrictions on recovering addicts as it imposes on any other person. The City has stipulated that Schwarz can rent his property to recovering addicts within the RM-15 and RU-75 districts as long as he complies with the turnover restrictions in the Code. As discussed further below, the City has provided sufficient accommodations to handicapped individuals who wish to reside in the City. As Plaintiffs have failed prove that Defendants' policies or practices have a greater adverse impact on persons with disabilities than on non-protected persons, Plaintiffs' have failed to establish a prima facie case of disparate impact.

### 3.   Reasonable Accommodation.

Discrimination under the FHA includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). Plaintiffs argue that Defendants have failed to reasonably accommodate

Plaintiffs by: (i) refusing to amend its zoning code to permit residential treatment facilities within the RM-15 zoning district; (ii) interpreting the tourist dwelling definition in such a way to give nuclear families an unfair advantage over Gulf Coast's clients, (iii) refusing to allow Plaintiffs to continue residing within the Properties because the tourist dwelling definition does not apply to them, and (iv) imposing an order, fine, and lien on the 12305 Property based on flawed interpretations of the City's Code.

To establish a prima facie case under the FHA, a plaintiff must show that "the requested accommodation is necessary in order for handicapped persons to have a reasonable opportunity to use and enjoy a dwelling." Dr. Gertrude A. Barber Center, Inc., 273 F. Supp. 2d at 652. To establish that a reasonable accommodation is necessary, a plaintiff must establish that "but for the accommodation [the residents of the home] will be denied an equal opportunity to enjoy the housing of their choice," and must show a "link between the proposed accommodation and the equal opportunity being sought." Id. Necessity can be demonstrated "through evidence that placement in small neighborhood based homes serves a therapeutic purpose." Id. at 653, citing Bryant Woods Inn., Inc. v. Howard County, 124 F.3d 597, 604 (4th Cir. 1997). Denial of an equal opportunity can be demonstrated by a showing that a city applied its "land use regulations in a manner [to] exclude people with disabilities entirely from zoning neighborhoods, particularly residential neighborhoods, or that will give disabled people less opportunity to live in certain neighborhoods than people without disabilities" Id. However, the "equal opportunity element "limits the accommodation duty so that not every rule that creates a general inconvenience or expense

to the disabled needs to be modified . . . only accommodations necessary to ameliorate the effect of the plaintiff's disability so that [he/she] may compete equally with the non-disabled in the housing market." <u>Wisconsin Community Services, Inc. v. City of Milwaukee</u>, 465 F.3d 737, 749 (7th Cir. 2006).

The parties agree that recovering addicts benefit therapeutically when they live together as a collective group.[12]  However, the City has not restricted Plaintiffs from living together in a collective group.  Rather, the City has restricted Plaintiffs from operating a transient use within a residential district in violation of the City Code's restrictions on tenant turnover.  Gulf Coast clients may reside within the RM-15 and RU-75 districts in a group environment, so long as they do not violate the occupancy turnover restriction of six (6) times per year.  Higher turnover is allowed in other areas of the City.  Schwarz may provide lodging for Gulf Coast clients in the RFM-30, RFH-50, and Commercial General zoning districts without regard to tenant turnover.  These districts account for 20% of the City's land area and include high end residential homes.[13]  There is no evidence that Gulf Coast's clients have been precluded from competing equally with the non-disabled in the City's housing market.

Schwarz also asserts that the City has refused his requests to amend the LDR to allow the use of a residential treatment facility in the RM-15 and RU-75 zoning districts.  On

---

[12] Defendants do argue, however, that recovering substance abusers who "need" residential housing are not appropriate for outpatient treatment.

[13] The City is a small beach/resort community.

January 23, 2007, the Court denied Plaintiffs' motion seeking to supplement the Amended Complaint with these allegations (Dkt. 159).[14]  The Court will not now permit Schwarz to add these allegations to bolster his other claims.  All of these attempts to persuade the City to amends its zoning regulations were made well after the parties had filed their respective lawsuits comprising this consolidated action.

If the Court were to grant one of Schwarz's "reasonable accommodations," it would be providing Schwarz with an economic windfall and an unfair advantage over other property owners in the area.  Schwarz has attempted to locate what is essentially a hotel or motel in a residential neighborhood.   As discussed by Judge Scriven in her Report and Recommendation (Dkt. 83), Plaintiffs' expressed need to operate the Properties as tourist dwellings or transient uses seems to be more of an accommodation to Gulf Coast's bottom line rather than an accommodation for the disabled.  As stated by the court in Woodfield Equities, LLC, *et al* v. The Incorporated Village of Patchogue, 357 F. Supp. 2d 622, 636 (E.D.N.Y. 2005), "[n]either the FHA, the ADA or the Rehabilitation Act allows for an entity to plunk down within a community in an area or in a way forbidden by local laws without first making any attempts to comply with such laws."   Schwarz began operating the Properties without any attempt to comply with the City's Code.  As Plaintiffs' have failed to establish the requested accommodations are necessary for Gulf Coast clients to have a

---

[14] The Court's Order also denied Plaintiffs the right to add the following allegations: (i) that the City's commencement of CEB proceedings regarding the 150 115th Street property violates the FHA and the ADA, and (ii) that the City's interpretation of family amounts to a disparate impact under the FHA, ADA, and Rehabilitation Act.

reasonable opportunity to use and enjoy a dwelling, summary judgment in favor of Defendants is appropriate.

## B.     Plaintiffs' Procedural Due Process and Florida Statutory Claims.

Pursuant to the United States and Florida Constitutions, no party shall be deprived of life, liberty, or property without due process of law.  To establish a procedural due process violation in the eleventh Circuit, a plaintiff must prove: "(i) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process."  Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003).  Plaintiffs claim the City violated their due process rights at the August 10, 2005 and August 25, 2005 hearings.  As a preliminary matter, the Court recognizes that the 12305 Property is a recognized property interest, and that the hearings before the CEB constituted a state action.

At issue before the Court is whether the City's attorney improperly acted in a dual capacity at the hearings.  The Florida Supreme Court has held that a local government attorney acts prosecutor by: (i) cross examining witnesses; (ii) making objections, and (iii) arguing against the party being charged with a violation.  Cherry Communications, Inc. v. Deason, 652 So.2d 803, 805 (Fla. 1995).  An attorney acts as advisor by:  (i) commenting on the evidence, (ii) making recommendations based on the record, and (iii) participating in deliberations and/or an adjudicatory process.  Id.  Under Florida law, while technical or legal rules may be disregarded in an administrative proceeding, the accused "must be given the opportunity to cross-examine witnesses, to inspect documents and to offer evidence in

explanation or rebuttal." <u>Seminole Entertainment, Inc. v. City of Casselberry</u>, 811 So.2d 693, 696 (Fla. 5th DCA 2001).

Plaintiffs claim the City's attorney acted as a prosecutor at the hearings by: (i) examining and cross examining witnesses; (ii) introducing evidence into the record; (iii) lodging objections on behalf of the city; and (iv) asserting arguments in response to those made by Plaintiffs' counsel.  Plaintiffs' allege the City attorney improperly acted in a dual role as advisor, by also: (i) directing the CEB how to rule on objections, (ii) commenting on the weight of the evidence, and (iii) making recommendations to the CEB concerning various matters.  Plaintiffs also claim Schwarz was denied the opportunity to question witnesses and present evidence.  In response, Defendants argue that Schwarz's counsel did cross examine witnesses and submit evidence, and that the City's attorney questioned witnesses on behalf of the CEB and not as prosecutor.

Section 2-161(f) of the City's Code provides that "[t]he code enforcement board shall take the testimony from the code inspector, the alleged violator, and any other witnesses.  Both sides shall have a right to give testimony, present witnesses and to cross examine adverse witnesses, in person or through their attorney."  Section 2-162 provides the "city attorney shall provide legal counsel to the code enforcement board.  The city manager is authorized to retain legal counsel to serve as prosecutor for those cases deemed appropriate."

A review of the hearing transcripts reveals that Schwarz's counsel was provided sufficient opportunity to cross-examine witnesses and enter evidence.  During the August 10, 2005 hearing, the City's attorney repeatedly asserted that she represented the board, that she

was not acting as prosecutor, and that all questions asserted and objections raised were done so on behalf of the board.  The same representations were made at the August 25, 2005 hearing.  The Court notes that both the city code enforcement officer and the City's attorney examined witnesses (with the code enforcement officer acting as prosecutor and the City's attorney acting on behalf of the City).  The City's attorney cross-examined witnesses, introduced evidence into the record, and lodged objections on behalf of the City.  Defendants argue that this practice is proper pursuant to Section 2-161(f) of the City's Code.

Though the Court cautions this practice and encourages the city to more clearly delineate the roles/functions of prosecutor and advisor, it does not conclude that Plaintiffs' procedural due process rights were violated.  Schwarz was represented by counsel at the hearing, and was afforded the opportunity to present his case and cross-examine witnesses. See Alex v. Allen, 409 F. Supp. 379, 388 (W.D. Pa. 1976) (holding it was not unconstitutional for a school solicitor to act in the dual roles of prosecutor and advisor to a school board so long as accused student was represented by counsel and given the opportunity to present his case).  He was not denied due process.

Finally, Plaintiffs' Amended Complaint seeks to appeal the August 25, 2005 hearing pursuant to Section 162.11, Florida Statutes.  In addition to re-asserting the claim that the City's attorney acted in an improper dual role, Plaintiffs also argue that the CEB failed to observe the statutory procedures outlined in Section 162.09(b), Florida Statutes, which requires a code enforcement board to consider the following factors in determining a fine: (i) the gravity of the violation; (ii) any actions taken by the violator to correct the violation,

and (iii) any previous violations committed by the violator.  During the hearing, the City's

attorney recommended that the CEB adopt certain findings of fact, referencing Section 2-164

of the City's Code regarding administrative fines rather than the applicable statute.  While

the statutory factors were not specifically referenced, a review of the transcript reveals that

the CEB considered each of these factors in reaching its conclusion.

Plaintiffs have thus failed to establish that they were denied constitutionally adequate

process by the CEB.  Accordingly, the City did not violate Plaintiffs' due process rights or

Section 162.09, Florida Statutes.  Plaintiffs' appeals of the August 10, 2005 and August 15,

2005 CEB hearings contained in Counts XX and XXI of the Amended Complaint are denied.

Summary judgment is appropriate in favor of Defendants.

## CONCLUSION

Plaintiffs have failed to establish that the City discriminated against them in violation

of the FHA, the ADA, the Rehabilitation Act, or the equal protection provisions of the United

States and Florida Constitutions.  The City's zoning regulations treat handicapped persons

the same as non-handicapped persons, and provide a reasonable portion of its land area for

the use sought by Plaintiffs.  This suit is more Gulf Coast wanting to buy less expensive

property in residential areas for its uses than it is about a failure to accommodate the

handicapped.

Plaintiffs have further failed to establish a violation of their procedural due process

rights pursuant to the United States and Florida Constitutions and Sections 162.11 and

162.09 of the Florida Statutes.  Accordingly, the Court grants summary judgment in favor of Defendants on all of Plaintiffs' claims.

It is therefore ORDERED AND ADJUDGED that:

1.    Defendants' Dispositive Motion for Summary Judgment and Incorporated Memorandum of the Law (Dkt. 177) is **GRANTED**.

2.    Plaintiffs' Motion for Summary Judgment and Incorporated Memorandum of the Law (Dkt. 178) is **DENIED**.

3.    Plaintiffs' Motion to Abate Proceedings Pending Outcome of Appeal Before the Eleventh Circuit Court of Appeals (Dkt. 217) is **DENIED as moot**.

4.    All pending motions are denied as moot.  The Clerk is directed to close this file.

**DONE** and **ORDERED** in Tampa, Florida on October 3, 2007.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2005\05-cv-1696.msj.wpd