# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

MATTHEW SCHWARZ, et al.,

    Plaintiffs,

v.                                                    Case No. 8:05-cv-1696-T-30MAP

CITY OF TREASURE ISLAND, et al.,

    Defendants.
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendants' Dispositive Motion for Summary Judgment and Incorporated Memorandum of Law (Dkt. 319) and Plaintiffs' Memorandum of Law in Support of Their Opposition to Defendants' Motion for Summary Judgment (Dkt. 325). The Court, having reviewed the motion, response, record evidence, and being otherwise advised in the premises, concludes that Defendants' Dispositive Motion for Summary Judgment should be denied.

## PROCEDURAL BACKGROUND

In September of 2005, Plaintiffs Matthew Schwarz ("Schwarz"), Gulf Coast Recovery, Inc. ("GCR"), James Henderson, and Krystal Falkowski filed this action against Defendants City of Treasure Island and City of Treasure Island Code Enforcement Board (the "City") alleging that the City had discriminated against them in violation of the Fair Housing Act ("FHA"), the Americans with Disabilities Act, and the Rehabilitation Act (Dkt. 1).

On October 3, 2007, this Court granted summary judgment to the City on all counts of Plaintiffs' amended complaint (Dkt. 239). Plaintiffs appealed the Court's order granting summary judgment and on October 8, 2008, the Eleventh Circuit Court of Appeals affirmed the summary judgment with one exception. See Schwarz v. City of Treasure Island, 544 F.3d 1201 (11th Cir. 2008). Specifically, the Eleventh Circuit determined that "there may be a genuine issue of material fact" regarding whether the accommodation requested by Schwarz, i.e., for the City to relax its restriction on occupancy turnover in the RM-15 zoning district was "necessary" within the meaning of the FHA. Id. at 1225-28 (emphasis in original).

The Eleventh Circuit remanded the issue of necessity to this Court "so that it can, with the assistance of the parties, conduct a full review of the present record, and any additional evidence the district court may permit the parties to present. If the district court concludes that there is a genuine issue of material fact, then the issue of 'necessity' must proceed to trial. If the district court concludes otherwise, then it may proceed to the entry of final summary judgment." Id. at 1228. Thus, this limited issue of "necessity" is now before the Court.[1]

---

[1] The Court ruled on February 25, 2009, that the parties could conduct limited discovery on the issue of "necessity" for an additional sixty (60) days and then submit motions for summary judgment on that limited issue.

# FACTS[2]

GCR is licensed by the Florida Department of Children and Family Services ("DCFS") to provide outpatient rehabilitation services to recovering substance abusers at its clinic in Treasure Island. Under the DCFS regulations, GCR cannot require its clients to live in a particular residence or place and GCR clients must find other accommodations while receiving treatment. To provide such accommodations, GCR and Schwarz own or lease single or multi family properties in the City's RM-15 zoning district and rent them to GCR's clients. GCR permits only clients of its outpatient clinic to move into the residences. Residents may stay as long as they wish after completing their outpatient treatment.

Clients opting to live in these halfway houses sign short-term leases with Schwarz or GCR, and generally pay between $1,000 and $2,000 per month to lease a single bedroom. Tenants are required to remain sober and drug-free and to refrain from various other activities while living in the properties. Incorporated into the leases as "Property Rules," these restrictions include: (1) not consuming drugs or alcohol; (2) not viewing pornography; (3) not possessing weapons; (4) agreeing to maintain the property; and (5) not having overnight guests without the permission of GCR.

Because neither Schwarz nor any GCR counselor lives at any of the properties, primary responsibility for enforcing the rules falls on the tenants, who have a powerful

---

[2] The parties agree that there is no dispute about the essential facts of this case, which are accurately recounted in Schwarz, 544 F.3d at 1205-12. For convenience, then, the Court will limit its discussion of the facts to the issue of "necessity."

interest in not being exposed to drugs or alcohol during their rehabilitation. Schwarz furnishes each property and provides food, but the residents prepare their own meals, clean up after themselves, do their own laundry, and socialize together in their free time. Although some residents have stayed as long as five months, most residents leave after completing their outpatient treatment, and the average stay is six to ten weeks.

The City limits to six the number of times a single-family or two-family dwelling can change occupancy during a twelve-month period in its RM-15 residential zoning district (hereinafter referred to as the "turnover requirement"). Schwarz has requested the City to relax the turnover requirement, arguing that it is a necessary accommodation to afford recovering substance abusers an equal opportunity to use and enjoy the halfway houses.

The City's Motion for Summary Judgment argues that the accommodation is not necessary within the meaning of the FHA, because "there is no evidence that the recovering addicts in this case need to live in the residences at issue" and "there is no evidence that short-term stays in the residences at issue contribute in any meaningful way to a substance abuser's recovery." (Dkt. 319). Plaintiffs counter that residency at the GCR housing during outpatient treatment enhances the benefits the residents receive from the outpatient treatment program and is an "essential part of successful recovery." (Dkt. 325).

For the reasons set forth herein, the Court concludes that the record in this case reflects that there is a genuine issue of material fact regarding the issue of whether short-term stays in the residences at issue contribute in a meaningful way to an addict's recovery.

## DISCUSSION

**I.      Summary Judgment Standard**

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. Id. Throughout this analysis, the judge must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in her favor. Id. at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. The evidence must be significantly probative to support the claims. Anderson, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual

issues are present, the Court must deny the motion and proceed to trial." Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir.1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248; Hoffman v. Allied Corp., 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989).

**II.     Analysis**

The Eleventh Circuit stated in Schwarz that the "critical issue concerning the four halfway houses is whether living in them is 'necessary' to afford recovering substance abusers an 'equal opportunity to use and enjoy' them." 544 F.3d at 1218 (citing 42 U.S.C. § 3604 (f)(3)(B)). The Eleventh Circuit noted that this issue turned on whether the requested accommodation was "necessary to ameliorate the effect of the plaintiff's disability so that she may compete equally with the non-disabled in the housing market." Id. at 1226 (citing Wisconsin Cmty. Servs., Inc. v. City of Milwaukee, 465 F.3d 737, 749 (7th Cir. 2006)).

Specifically, the Eleventh Circuit stated:

> In this case, the City has conceded that the halfway-house residents are disabled because of their addictions. In general, the 'need' created by a substance addiction is help with breaking that addiction and maintaining sobriety. Therefore, the question becomes whether relatively short-term stays in the halfway houses contribute in a meaningful way to an addict's recovery. See Bryant Woods Inn, 124 F.3d at 605 (concluding that a municipality need not allow a group home to expand because there was "no evidence ... that expansion from 8 to 15 residents would be therapeutically meaningful"); Smith & Lee, 102 F.3d at 795-96 (concluding that group homes were 'necessary' for

> the elderly because they 'often provide the only means by which this population can continue to live in residential neighborhoods'). Gulf Coast has contended throughout the litigation that living in halfway houses is absolutely essential in many cases, but the City vehemently disagrees.
>
> The district court did not reach this issue because it concluded that the availability of other dwellings in the City of Treasure Island meant that the requested accommodations were not 'necessary' within the meaning of the statute. But because we have rejected this interpretation of § 3604(f), <u>we could only affirm the district court's grant of summary judgment to the City if no reasonable jury could conclude that the halfway houses at issue here provide therapeutic benefits necessary to their residents</u>. See Fed.R.Civ.P. 56(c); Tullius v. Albright, 240 F.3d 1317, 1320 (11th Cir. 2001) ('If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial.') (quotation marks omitted).

Id. at 1227 (emphasis added).

Here, the Court notes that the record reflects a genuine issue of material fact regarding whether the residents' relatively short-term stays in the residences at issue contribute in a meaningful way to their recovery. It is undisputed that the residents' average stay at GCR is six to ten weeks. It is disputed, however, whether these relatively short-term stays contribute in a meaningful way to the residents' recovery. Defendants' and Plaintiffs' experts disagree on this issue. Indeed, Defendants' expert, Dr. Joseph Molea ("Dr. Molea"), opined that substance abuse treatment lasting less than ninety days is "considered ineffective across the board." (Dkt. 195 at 99). However, Dr. Molea talked to only two GCR residents. Id. at 105.

On the other hand, Plaintiffs' expert, Riley Regan ("Mr. Regan"), personally visited GCR and its housing program, and personally interviewed many of the GCR residents. (Dkt. 325-4). Mr. Regan opined that the shared housing was a major component of the recovery

program, that it enhanced the benefits that the residents received from the recovery program, and that the residents he interviewed indicated that living in GCR's residences was imperative to their recovery. Id. at 92-96, 101-102, 130-32. Specifically, Mr. Regan stated: "Every one of the individuals that I interviewed said that their recovery program would never have worked had it not been for their opportunity to live together with other people who were going through the program." Id. at 95-96.

The affidavit of Jane Doe V and the testimony of John Doe I also demonstrate a disputed fact regarding the issue of whether relatively short-term stays in the residences at issue contribute in a meaningful way to an addict's recovery. Jane Doe V's affidavit states that she "would not have experienced such a strong recovery if [she had] not live[d] with [the] other recovering addicts" and that the "supportive environment created by the residences played an instrumental role in getting [her] life back on track." (Dkt. 325-2 at ¶7). John Doe I testified at the injunction hearing that the "whole experience completely changed [his] life." (Volume I - pgs 79-80). Also, Dianne Allen, GCR's Clinical Director, testified that, based on feedback she received from GCR's clients after they leave the program, GCR averages an 80 percent or better success rate. (Dkt. 188 at 129-30).

As noted by the Eleventh Circuit in Schwarz, the expert opinion of Dr. Michael Maher, Plaintiffs' first expert, also demonstrates more generally the therapeutic benefits of group living for recovering substance abusers. 544 F.3d at 1227; see also generally Dkt. 181. Moreover, there are "a series of federal decisions addressing the efficacy of group living arrangements for recovering substance abusers." Id. (citing Connecticut Hosp. v. City of

New London, 129 F. Supp. 2d 123 (D. Conn. 2001); Oxford House, Inc. v. Town of Babylon, 819 F. Supp. 1179 (E.D.N.Y. 1993)).

The Court must examine the evidence in the light most favorable to Plaintiffs, the non-movants, and draw all justifiable inferences in their favor. With this standard in mind, the record reflects that there is a dispute regarding whether the short-term stays at GCR's residences contribute in any meaningful way to a substance abuser's recovery. Thus, this issue will be for the jury to decide.

It is therefore ORDERED AND ADJUDGED that Defendants' Dispositive Motion for Summary Judgment (Dkt. 319) is hereby **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida on December 22, 2009.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2005\05-cv-1696.msjafterremand.wpd